71 So.2d 18

## PURVIS v. BUSEY.

I Div. 548.

Supreme Court of Alabama.

March 4, 1954.

374

Barnett, Bugg & Lee, Monroeville, for appellant.

J. M. Coxwell, Monroeville, for appellee.

LAWSON, Justice.

This suit was filed in the circuit court of Monroe County, in equity, on May 29, 1952, by Fred Busey against Savage Purvis. The purpose of the bill was to secure a decree enjoining the respondent from obstructing an alleged public road.

Where a road is shown to be a public road, a private individual is entitled to an injunction against encroachment or obstruction thereon when he has sustained special damages different, not merely in degree, but in kind from that suffered by the public at large. Sandlin v. Blanchard, 250 Ala. 170, 33 So.2d 472.

The averments of the bill were not challenged by demurrer. They were sufficient to give the bill equity. See Rudolph v. City of Elyton, 161 Ala. 525, 50 So. 80; Cochran v. Purser, 152 Ala. 354, 44 So. 579; Jones v. Bright, 140 Ala. 268, 37 So. 79.

Submission for final decree was on the pleadings and on evidence taken before a commissioner. The trial court rendered a decree wherein the relief prayed for was granted. From that decree the respondent below, Savage Purvis, has appealed to this court.

The record shows that the appellant, Savage Purvis, to whom we will refer hereafter as the respondent, is the owner of forty acres of land, being the NW ¼ of the SE ¼ of Section 23, Township 6, Range 6, in Monroe County. The appellee, Fred Busey, to whom we will refer hereafter as the complainant, owns the forty acres immediately east of and adjoining the respondent's forty-acre tract, being the NE ¼ of the SE ¼ of said Section 23. The complainant is also the owner of the SW ¼ of the NE ¼ and the SE ¼ of the NE ¼ of Section 23. Thus it appears from the record that the property of the respondent is adjoined on the north, northeast and east by the property of the complainant.

For the purpose of a better understanding of the issues presented by this appeal, we are including in the opinion a rough sketch of the locus of the dispute. This sketch was not introduced in evidence; it is not drawn to scale; it is merely our understanding of the general location of the roads involved and their surroundings as shown by the pleadings and the evidence.

The matters depicted in the sketch set out above are without dispute except in one respect. We have accepted the testimony adduced on behalf of the complainant that Road B, after it turns southward, adjoins the complainant's tract no. 1. The testimony as it bears on this question is in conflict. Neither the complainant nor the respondent introduced any survey or the testimony of a surveyor as to the exact boundary lines of Road B. According to the respondent and two of his sons, the eastern boundary of Road B after it turns southward is from twelve to twenty feet west of the complainant's tract no. 1. But each of them admit that for a period of thirty-five years or more persons have used Road B as a means of entering the complainant's tract no. 1. On the other hand, complainant and a number of apparently disinterested witnesses testified that Road B is situated as shown in the above sketch. Among those witnesses was a nephew of the respondent who some years back had lived on the complainant's tract no. 1 and had used Road B as a means of ingress and egress.

This litigation arises out of the fact that on or about May 12, 1952, the respondent erected a fence in two places across Road B.

It is clear from the evidence that respondent recognized that Road B had at one time been a part of a county public road between two towns in Monroe County, Perdue Hill and Frisco City. It is also apparent that the respondent acted as he did on the theory that Road B was no longer a public road but a private way across his property which he had the right to close.

We have no evidence before us as to how, by whom or by what authority Road B was originally laid out, although it is without dispute that it was at one time a part of a county public road between the two towns mentioned above.

We think the evidence shows that Road B is a part of a curve which the county authorities eliminated approximately eighteen years prior to the time this controversy arose. It was evidently at the time the curve was eliminated that the part of Road A which lies southeast of the point where Roads A and B connect was constructed. As far as we can determine from the record, the remainder of Road A, which is the present public road between Perdue Hill and Frisco City, had crossed respondent's land in the manner indicated on the sketch for a period of at least thirty-five years.

As far as this record discloses, neither the county nor any abutting landowner has proceeded under the provisions of Chapter 3, Title 56, Code 1940, to close and vacate Road B or any other part of the eliminated curve.

However, we understand the evidence to show without dispute that since the county made the alterations referred to above it has not treated or maintained Road B or the other parts of the eliminated curve as a county road. Most of the eliminated curve which lies south of the respondent's land has been closed and put in pasture or in cultivation.

The evidence shows, however, that the respondent never attempted to appropriate Road B to his own use or to place a barrier across it at any place until on, to wit, May 12, 1952. For a period of approximately eighteen years the complainant, his tenants and any member of the public who had occasion to do so had used Road B as a means of getting to complainant's tract no. 1 from Road A.

We understand the evidence to show that at the time the alterations in the road were made there were fences on each side of Road B and we further construe the evidence to show that those fences still remain. Although the county authorities have done no work on Road B since the alteration, the evidence shows that Road B has continued to be a well-defined way, eighteen to twenty feet wide, on which vehicles could pass.

The general rule is to the effect that the public acquires an easement only in highways, the fee of the land remaining in the owner, subject to the easement. 39 C.J.S., Highways, § 136, page 1071. It is also the general rule that when a highway is abandoned the land becomes discharged of the servitude and the absolute title to the land covered by the highway reverts to the owner of the fee except where the fee to the highway has passed to the public—39 C.J.S., Highways, § 137, pages 1073–1074. See Elliott on Roads and Streets, 4th Ed., Vol. 2, §§ 1190 and 1191.

It is on these principles that the respondent justifies his action in placing the obstructions across Road B. In other words, the respondent says Road B was at one time a public road but it was abandoned as such and as owner of the fee he had the right to treat Road B as his property.

But the burden was upon the respondent of showing an abandonment by clear and satisfactory evidence. Richey v. Shephard, 333 Mich. 365, 53 N.W.2d 487; Town of Chouteau v. Blankenship, 194 Okl. 401, 152 P.2d 379, 171 A.L.R. 87; Sterlane v. Fleming, 236 Iowa 480, 18 N.W.2d 159; Long v. Melton, 218 N.C. 94, 10 S.E.2d 699; 39 C.J.S., Highways, § 130, pages 1065–1066; Elliott on Roads and

Streets, 4th Ed., Vol. 2, § 1173. See Mc-Gough v. McGough, 245 Ala. 544, 17 So.2d 765.

Without question a part of the eliminated curve, that which lay south of the respondent's land, is no longer usable for travel, inasmuch as it has been put in cultivation or pasture by the landowners. But this fact does not *per se* constitute an abandonment of Road B which has been continued to be used as a road. Proctor v. Proctor, 222 Mo.App. 21, 4 S.W.2d 882; Sterlane v. Fleming, supra; Current v. Stevenson, 173 Tenn. 250, 116 S.W.2d 1026; Foster v. Bullock, 184 Wash. 254, 50 P.2d 892; 39 C.J.S., Highways, § 131, page 1067.

Nor does the failure of the county authorities to keep the road in repair necessarily work an abandonment. Sterlane v. Fleming, supra; Maire v. Kruse, 85 Wis. 302, 55 N.W. 389, 26 L.R.A. 449; Spradley v. Hall, Tex.Civ.App., 57 S.W.2d 182.

The fact that the part of the eliminated curve immediately south of respondent's land has been destroyed results in Road B being a cul-de-sac. Being a cul-de-sac, the general public would have and has had but little occasion to use it, but as shown above Road B has been used continuously up until May 12, 1952, by the complainant and his tenants and has been open to such use as the public chose to make of it. The mere fact that Road B forms a cul-de-sac does not deprive it of its character as a public highway. Foster v. Bullock, supra; Sterlane v. Fleming, supra.

We are of the opinion that the respondent failed to meet the burden which was upon him to show an abandonment of Road B.

In Harbison v. Campbell, 178 Ala. 243, 59 So. 207, it was said that nonuser short of the time of prescription does not operate as a discontinuance of a public road. We have not rested our conclusion here on that statement for here, unlike the Harbison case, supra, there has been a substitution of one road for another and there is respectable authority for the proposition that when such is the case there can be abandonment by nonuse for a period short of the time of prescription. But we leave a decision of that question to await a case where such a decision is necessary.

Respondent further contends that complainant has not shown such special injury as would authorize him to maintain the action. In view of our finding that complainant's tract no. 1 abuts upon Road B, this contention cannot be sustained. Ingress and egress to and from complainant's tract no. 1 was materially obstructed and interrupted. Complainant, therefore, has shown such special injury as entitles him to maintain this action.

It is argued that complainant has another means of entering his tract no. 1 to which Road B leads, inasmuch as that tract and the other tracts of land owned by complainant which are described above all adjoin and that complainant could enter his property at a point where Road A crosses his tract no. 3 and from that point proceed to his tract no. 1 over his own land. This would be a circuitous route covering some distance. As to when special damages are shown by the obstruction of a highway to one who owns property abutting on the highway, different in kind from those sustained by the general public, is a question not always free from difficulty. But this court is committed to the rule that if the obstruction forces the owner of the land out of his direct, public street or road into a circuitous route in his commerce and intercourse with the outside world, this is a special injury to him not suffered by the general inhabitants of the state, county or city. Sloss-Sheffield Steel & Iron Co. v. Johnson, 147 Ala. 384, 41 So. 907, 8 L.R.A., N.S., 226; Alabama Great Southern R. Co. v. Barclay, 173 Ala. 124, 59 So. 169; City of Troy v. Watkins, 201 Ala. 274, 78 So. 50. This case is quite different from that of Jackson v. Birmingham Foundry & Machine Co., 154 Ala. 464, 45 So. 660. In that case there was express legislative authority to vacate and obstruct the street and the complainant did not abut the

part of the street so vacated. See City of Troy v. Watkins, supra.

The decree of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.