The Circuit Court of Baldwin County sitting without a jury held that the appellant-defendant was unlawfully obstructing a public road. The court gave the appellant thirty days to remove the obstructions.
Appellant contends that the evidence was insufficient to support the judgment of the court. We disagree and affirm.
The road in question is a rural road bordered by farmland. The road follows a section line south from County Road 54 for approximately one-half mile.
The appellant's land lies along the entire east side of the road and along the northern half of the west side. The land of Robert Linden (an appellee) borders the southern half of the west side. As the road terminates, it abuts the land of Lloyd E. Taylor and Alan Dale Taylor (appellees), which lies south of that part of the appellant's land situated on the east side of the road.
The sole question is whether the road became public because of general use by the public for twenty years or more. "The case presents purely a question of fact — whether the road is in fact a public road or only a private . . . road. . . ."Williams v. Prather, 239 Ala. 524, 526, 196 So. 118, 119
(1940). We would not reverse the trial judge's findings based on testimony taken ore tenus without a showing that they are plainly wrong or manifestly unjust. Hinds v. Slack, 293 Ala. 25, 299 So.2d 717 (1974).
Lester D. Linden, age seventy-one, testified that in 1905 his father purchased what is now the Davis property; the record is not entirely clear whether this included the Davis property west of the road or just the Davis property east of the road. Lester later acquired the property from his father, lived on it, and farmed it until approximately 1947 when he sold it. According to Lester the road was used for approximately five years as a regular mail route together with an "old trail road" along the south side and east side of the Davis property. (Robert T. Linden, Lester's brother, later testified that the road was used by the mail man beginning in 1914.) The trail road on the south side and the east side is not in question and apparently was abandoned long ago.
On cross-examination Lester Linden testified as follows:
"Q. Did the general public use it?
"A. If they wanted to.
"Q. Anybody?
"A. Anybody, yes sir.
"Q. Where were they going?
 "A. Where do people go? — Hunting and fishing.
"Q. Where do they fish?
"A. They went quail hunting.
"Q. The general public?
"A. Anybody that wanted to go.
 "Q. You never objected to people going up and down your road?
"A. That wasn't my road."
Later, on cross-examination, Lester Linden also testified as follows:
 "Q. When they got down here they were trespassing on your property?
"A. No.
"Q. You didn't own this property?
 "A. No, there was a section line road there ans always been a public road."
Mr. Milton J. Gustafson, age seventy-four, testified that he was a friend of the Linden family when they lived on the property. He arrived in the area in 1904 with his parents, lived there until 1936, and returned to the area in 1953.
 "Q. Do you recall whether or not there was a road to the Linden home place?
 "A. There was a road, not only to the place but past it.
"Q. Was it on the south side of the Linden place?
"A. Yes, sir.
. . . . .
 "Q. Where did you go when you went beyond the Linden place? *Page 777 
 "A. Well, beyond Fish River we had friends and acquaintances of my parents' family named Rickman that were friends and we visited them and another family named Newport, and in addition to that, that was our main road to Daphne which was our access to Mobile."
The road has been fenced on both sides during part of its history. The testimony indicated there were gates across the road on occasion to control livestock, but that the gates were either open or unlocked with the exception of a few months within the past few years when the Taylors and Davis placed a gate across the road by mutual agreement. Other testimony indicated that the road as it now exists has been open to anyone who wanted to use it, though as a practical matter the road was used primarily, if not solely, by the landowners bordering the road, and rarely by anyone else.
At the close of all the evidence, the trial judge made the following statement:
 "I don't think there is any doubt that this road has been a public road for 60 or 70 years and here is the whole thing that I think Mr. Poggi and his client forget: When you acquire a road by prescription, it takes 20 years using it by the public; the mere fact the public moves out and did not use it much doesn't destroy it. The only way you can change it is by following the Statute by going to the County Commission and getting the adjoining land owner and the other way is fences up, but it takes the same length of time to take it away from the public as it did for the public to acquire it. . . ."
We conclude there was sufficient evidence presented to support the trial judge's findings that the road is a public road. Furthermore, the evidence supports the finding that the road has not reverted to a private road. "Nonuser short of the time of prescription does not operate as a discontinuance of a public road. . . ." Harbison v. Campbell, 178 Ala. 243, 252,59 So. 207, 210 (1912). The fact that at one time the road had an extension which no longer exists does not change the nature of that part which has continued to be used. Purvis v. Busey,260 Ala. 373, 71 So.2d 18 (1954). Testimony existed indicating that at one time or another the county may have graded the road; however, county maintenance is not essential to the status of public road, though it would be strong evidence thereof. Carterv. Walker, 186 Ala. 140, 65 So. 170 (1914).
The judgment is affirmed.
AFFIRMED.
HEFLIN, C.J., and BLOODWORTH, JONES and EMBRY, JJ., concur.