STUART, Justice.
AFFIRMED; NO OPINION.
*509 See Rule 53(a)(1), (a)(2)(C), and (a)(2)(F), Ala. R.App.P.
MOORE, C.J., and HOUSTON, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
SEE and LYONS, JJ., dissent.
SEE, Justice
(dissenting).
I respectfully dissent.
Winston County filed a declaratory-judgment action against John Elliott, David Elliott, and Sharon Melson (John, David, and Sharon are siblings and are hereinafter referred to collectively as “the Elliotts”), seeking to have an old dirt roadbed that runs across the Elliotts’ property declared a public road and seeking to compel the Elliotts not to block public access to Smith Lake by way of the road. The trial court entered a judgment in favor of the County, and the Elliotts appealed.
The Elliotts own lots 6 and 7 in what they refer to as the Yellow Creek Subdivision # 2 in Winston County. The property sits on the east side of Smith Lake. The Elliotts’ property borders Smith Lake and a pier extends from their property into Smith Lake. A roadbed, alleged in this case to be the old “Yellow Creek Road,” runs through one of the Elliotts’ lots from Tidwell Drive to Smith Lake. The Elliotts’ deed makes no mention of a right-of-way or easement for a road through either lot. Winston County levies property taxes on the Elliotts’ property, which includes the roadbed. In 1979, when the Elliotts’ father purchased the property, the roadbed was washed out, gullied, and overgrown with brush.
In 1981, the Elliotts and several neighbors constructed a concrete boat-launch ramp at the point where the roadbed meets Smith Lake. The Elliotts and their neighbors agreed that only seven property owners could use the ramp; they strung a cable across the ramp, which they locked to prevent public access. The Elliotts subsequently built a gate across the boat ramp. It is necessary to pull into the Elliotts’ circular driveway to use the ramp. The Elliotts have granted permission to use their driveway to launch boats only to seven neighbors.
In October 1989, the Winston County engineer sent the Elliotts a letter stating that Yellow Creek Road is a public road and that if they did not remove the cable across the boat ramp, the County would remove the cable. In June 2000, Winston County filed the present declaratory-judgment action against the Elliotts.
At trial, Charles Gilbreath, the county engineer from 1987 to 1989, testified that he remembered riding on Yellow Creek Road as a child in 1940 or 1941. He recalled that the land through which the road ran was unimproved and wooded in the 1940’s and 1950’s; there were no fences along the road and only two houses. Gilbreath testified that before the area was flooded to create Smith Lake, in the 1960’s, people used Yellow Creek Road to travel between the towns of Houston and Arley. Gilbreath identified Yellow Creek Road on several maps. Gilbreath admitted that the location of the road on a 1933 map varied by a quarter mile from its location on a 1953 map. Gilbreath recalled a “rock cut” along Yellow Creek Road; he identified the roadbed through the Elliotts’ land as being Yellow Creek Road, because he recognized the “rock cut” along the roadbed near the boat ramp. Gilbreath testified that when the land was flooded to create Smith Lake, the County built County Road 63 to connect Houston and Arley because people could no longer use Yellow Creek Road to travel between the two towns.
*510 Several Winston County employees testified that Winston County has graded Yellow Creek Road at various times since the 1940’s. Sometimes the County graded the road to the water’s edge, while other times it graded only a portion of the road.
Jimmy Mitchell, one of the Elliotts’ neighbors, testified that in the 1970’s he cut down some trees that had grown in the road so that he could get his boat down the road to Smith Lake. Mitchell said that he had not seen the County do any maintenance on the road since 1969, and that in 1969, around the time he purchased his land, there were no houses on Yellow Creek Road. Mitchell testified that before the group of neighbors built the ramp, a person needed a four-wheel-drive vehicle to get to the lake by way of the road. Mitchell stated that he was at his Smith Lake property every Friday for about 10 years and that he never saw anyone use Yellow Creek Road to put a boat in the lake until after the Elliotts and their neighbors built the boat ramp. Mitchell admitted that he was not on his Smith Lake property during the week and that he could not always see the ramp when he was fishing. Mitchell was one of the neighbors who participated in building the concrete ramp.
Tommy Littrell, another neighbor, testified that before the neighbors put in the concrete boat ramp, the road was grown over with brush. Littrell recalled that the road was covered with brush in 1965 and that he did not recall ever seeing anyone from the County grade below where the Elliotts had strung the cable. Littrell testified that he did not help pour the concrete for the boat ramp, but he did help clear the road when the ramp was built. He said that he does not have a key to the cable, but that he uses the ramp to put his boat in the water if other people with keys are around the ramp.
Gerald Tucker, another neighbor, testified that he first put his boat in Smith Lake using Yellow Creek Road in 1979. He said that he did not have to cut down any trees, but that he did have to remove limbs and other brush from the road to get to the lake. Tucker said that he thought the property on which the neighbors built the ramp was owned by Alabama Power Company because, he said, no one owns the property below the 510-foot watermark.[1] Tucker was part of the group of the Elliotts’ neighbors that built the boat ramp.
Based on this testimony, the County argued that it had obtained a prescriptive easement to Yellow Creek Road by 1937, and that that easement continued after Smith Lake was created in the 1960’s. The trial court found that Yellow Creek Road was a public road to the water’s edge of Smith Lake, and it ordered the Elliotts to remove any obstacles that would restrict the public’s use of the road. This Court affirms the trial court’s judgment without opinion. I dissent.
The Elliotts argue to this Court that the trial court erred when it found that the County had obtained a highway easement for the portion of Yellow Creek Road that runs across their property, making it a public road, or, alternatively, that the trial court erred by not finding that, if the County had a highway easement, it aban *511 doned the easement when Smith Lake was created in the 1960’s and the road became a dead-end into the lake. I agree with the Elliotts that the County failed to demonstrate that it had acquired a prescriptive easement over the Elliotts’ land. I also believe that the shift in use from roadway to boat ramp prevents the County from maintaining its road easement as a boat-ramp easement.
The trial court’s judgment was based upon ore terms testimony.
“ ‘Our standard of review is whether the trial court’s judgment is supported by the evidence. Unless there is not sufficient evidence to support the trial court’s decree or unless the trial court’s decree is otherwise plainly and palpably erroneous or contrary to the great weight of the evidence, the trial court’s decree must be affirmed.’ ”
Smith v. Smith, 482 So.2d 1172, 1174 (Ala.1985) (quoting Menefee v. Lowery, 375 So.2d 798, 795 (Ala.1979)).
I believe that in this case the trial court misapplied the law to the facts when it found that the County had demonstrated that Yellow Creek Road is a public road. Generally,
“[a] public way or road is established in one of three ways: first by a regular proceeding for that purpose; second, by a dedication of the road by the owner of the land it crosses and subsequent acceptance by the proper authorities; or, third, by virtue of its being generally used by the public for 20 years.”
Auerbach v. Parker, 544 So.2d 943, 945 (Ala.1989).
“ ‘ “[A]n open, defined roadway, through reclaimed land, in continuous use by the public as a highway without let or hindrance for a period of twenty years becomes a highway by prescription....’”
“Where[, however,] a road runs over wooded or ‘unimproved’ land, or land which, though once reclaimed, has been ‘turned out’ or left open and unused, there is no presumption of dedication by mere use; rather there is a presumption of permissive use, and the user must establish his use as adverse to that of the owner. ‘This principle is grounded on sound policy. Otherwise, an owner with no present use for the land over which the road runs would be required to suffer the expense of taking affirmative action to prevent travel over his unused land to avoid having a public road established on that land.’ ”
McInnis v. Lay, 533 So.2d 581, 583-84 (Ala.1988)(emphasis omitted).
There is no evidence in the record to support the conclusion that there was public use of Yellow Creek Road adverse to the Elliotts or their predecessors in interest. Gilbreath’s testimony indicated that people used the road to travel between Houston and Arley at least as early as the late 1930’s, and that the road appeared on County maps; however, Gilbreath’s testimony also indicated that at that time the land through which the road ran was wooded and unimproved. The record is devoid of testimony indicating that anyone made any improvements to the land before the property that became Smith Lake was flooded. Gilbreath’s testimony indicated only that he recalled some houses set along Yellow Creek Road, but this Court held in Mclnnis, that “[w]e can see no basis upon which to conclude that the character of a tract of wooded or ‘unimproved’ land should be altered by its mere proximity to another tract, or other tracts, of ‘improved’ land.” 533 So.2d at 584. Where land is unimproved, “there is no presumption of dedication by mere use.” McInnis, 533 So.2d at 585.
*512 No testimony in the record indicates that anyone used Yellow Creek Road for any purpose in the 1960’s. Some testimony in the record indicates that some people may have used four-wheel-drive vehicles to travel on the road to launch boats into Smith Lake without the Elliotts’ permission during the 1970’s after the land had been improved by the construction of the Elliotts’ house.
Testimony indicates that the Elliotts, with the help of their neighbors, poured a private concrete boat ramp and strung a cable across the ramp to prevent adverse public use of their land. Because the testimony in this case indicated that the land was unimproved through at least the 1960’s and that the Elliotts blocked access to their land once the land had been improved, the County failed to prove either that it obtained an easement by prescription during the period when the land was unimproved or during the period after the Elliotts improved it.
Even if the County had acquired a prescriptive highway easement in the Elliotts’ property in 1937, the general rule is that the public acquires by prescription only an easement in a highway, not ownership in fee simple of the land on which the highway lies, and that when the highway is abandoned “the land becomes discharged of the servitude.” Purvis v. Busey, 260 Ala. 373, 377, 71 So.2d 18, 21 (1954).
The Elliotts argue that the County abandoned its highway easement in Yellow Creek Road when the property that became Smith Lake was flooded and Yellow Creek Road then dead-ended at the lake, effectively turning the road into a boat ramp. The fact that a portion of a highway may no longer be usable for travel, however, or “the failure of the county authorities to keep the road in repair” does not “necessarily work an abandonment.” Purvis, 260 Ala. at 373, 71 So.2d at 22 (“The fact that the part of the eliminated curve immediately south of respondent’s land has been destroyed results in Road B being a cul-de-sac_The mere fact that Road B forms a cul-de-sac does not deprive it of its character as a public highway.”). Thus, the County could retain its highway easement even though the creation of Smith Lake turned the road into a cul-de-sac, but the County does not have a boat-ramp easement in the road, because it never acquired a boat-ramp easement.
At the time the County claims that it acquired a highway easement in the El-liotts’ land in 1937, people did not launch boats from the road. Smith Lake was not created until the 1960’s. The record indicates only that it is possible that some people may have launched boats into Smith Lake after traveling over Yellow Creek Road during the 1970’s. The El-liotts placed a cable across the concrete boat ramp in 1981 when the ramp was constructed. Therefore, nothing in the record indicates adverse public use of the Elliotts’ boat ramp sufficient to allow the County to claim a boat-ramp easement. Hereford v. Gingo-Morgan Park, 551 So.2d 918, 921 (Ala.1989)(“ ‘To establish an easement by prescription, the claimant must use the premises over which the easement is claimed for a period of twenty years or more, adversely to the owner of the premises, under claim of right, exclusive, continuous, and uninterrupted, with actual or presumptive knowledge of the owner.’ ” (quoting Bull v. Salsman, 435 So.2d 27, 29 (Ala.1983))).
“As a general rule, one holding an easement cannot change the character of that easement or ‘enlarge upon [that] easement for other purposes.’ ” Chatham v. Blount County, 789 So.2d 235, 241 (Ala.2001) (citations omitted). See also Baptist Found. of Alabama v. Penn, 295 Ala. 122, 126, 324 So.2d 766, 769 (1975)(an “existing public *513 easement ... cannot be changed or enlarged”). Further, an easement holder may not “ ‘materially increase the burden upon the servient estate.’ ” Blalock v. Conzelman, 751 So.2d 2, 6 (Ala.1999)(quot-ing White v. Walsh, 105 Cal.App.2d 828, 832, 234 P.2d 276, 278 (1951)). The record indicates that public use of the boat ramp would materially alter the burden that would be placed on the Elliotts’ property because people must turn around in the Elliotts’ drive in order to launch a boat from Yellow Creek Road.[2]
Because the County failed to prove that it acquired a prescriptive boat-ramp easement, and because public use of the boat ramp shifts the use of the easement and materially changes and enlarges the burden on the Elliotts’ property, I believe that the trial court erred when it ordered the Elliotts to permit public access to the boat ramp. Therefore, I dissent.

. Smith Lake is "an APCo [Alabama Power Company] hydroelectric development. APCo acquired much of the land around what is now Smith Lake in the years prior to the development of the lake. Later, however, APCo sold off some parcels of that land.... APCo retained the fee title to land lying at elevations less than 510 feet above mean sea level, and retained a flood easement over lands lying between 510 and 522 feet above mean sea level....” Alabama Power Co. v. Drummond, 559 So.2d 158, 159 (Ala.1990).

. I would note that the change from highway use to boat-ramp use also could result in cars and trailers being parked in the area, in groups using the landing as a staging area, and for picnicking and other activities.