*1204
 
 MOORE, Judge.
 

 Marcy Bradshaw Darnall III, Elizabeth Darnall Champion, Dorothy Darnall Franks, and Trent Putman appeal from a judgment entered by the Lauderdale Circuit Court in favor of James Hughes, Jr. (“Hughes”), Shirley Hughes, and Tyler Calhoun III. We affirm in part, reverse in part, and remand.
 

 Procedural History
 

 On September 20, 2006, the Hugheses and Calhoun filed a complaint against Dar-nall, Champion, Franks, and Putman (hereinafter sometimes referred to collectively as “the Darnalls”) and Lovie Yvonne Tanner, requesting that the court declare to be public a certain road that runs through property owned by Darnall, Champion, and Franks (“the Darnall property”), property owned by Tanner (“the Tanner property”), property owned by the Hugheses (“the Hughes property”), and property owned by Calhoun (“the Calhoun property”). Putman has a license to hunt on the Darnall property and manages the Darnall property. The Hugheses and Calhoun alleged that either Darnall, Champion, Franks, or Putman had obstructed the road by erecting a gate across the road in 2006 and requested the court to award damages resulting from that obstruction.
 

 The Hugheses and Calhoun attempted to serve the summons and complaint on Darnall by certified mail; the certified-mail notice was returned marked “unclaimed.” Champion and Putman answered the complaint on November 20, 2006. On November 21, 2006, the Hughes-es and Calhoun filed a motion requesting permission to seive Darnall and Franks by publication. They attached to their motion an affidavit of their attorney stating that Darnall had avoided service and that the residence of Franks was unknown and could not be ascertained after diligent effort. The court granted that motion on that same day. After being served by publication, Darnall and Franks answered the complaint on December 4, 2006. Franks averred that her address could have been obtained through diligent effort.
 

 On January 30, 2007, Tanner filed an answer in which she consented to the relief requested in the complaint. On April 24, 2007, the Hugheses and Calhoun amended their complaint to add Lauderdale County as a defendant. No additional claim was made against Lauderdale County. On April 26, 2007, Lauderdale County answered the complaint, stating that it was without sufficient knowledge to admit or deny any interest in the road.
 

 After an ore tenus trial, the trial court entered a judgment on August 29, 2007, declaring that the road was a public road from the point of its intersection with County Road 79 and through the Hughes property. The Hugheses were awarded $15,000 in damages, and Calhoun was awarded $5,000 in damages. The trial court dismissed Tanner as a party to the action because “[n]o claim [was] made against [her].”
 
 [1]
 
 On September 18, 2007, the Darnalls filed a motion to alter, amend, or vacate the judgment or, alternatively, for a new trial. The trial court failed to
 
 *1205
 
 rule on that motion, and, thus, it was denied by operation of law on December 17, 2007, 90 days after it was filed.
 
 See
 
 Rule 59.1, Ala. R. Civ. P.
 

 On November 2, 2007, the Hugheses and Calhoun requested reimbursement for, among other things, the cost of serving Darnall and Franks by publication. The Darnalls opposed that motion, arguing that the Hugheses and Calhoun had failed to show that any effort had been made to ascertain the location of Darnall and Franks. On January 16, 2008, the trial court entered an order that, among other things, awarded the cost of the service by publication to the Hugheses. The Dar-nalls filed their notice of appeal to this court on January 16, 2008.
 

 Facts
 

 The road at issue connects Lauderdale County Road 79 and Lauderdale County Road 8. From County Road 79, the road runs southwest through the Darnall property, the Tanner property, the Hughes property, and the Calhoun property. The road continues through the property of various property owners until it reaches County Road 8. A former Lauderdale County employee testified that the road had been maintained by the County from 1951 to 1981. The undisputed testimony indicated that the road had been used by the public and that it had been generally known in the community that the road was public from approximately the 1920s until approximately 20 years before the trial. Most of the witnesses who testified had been unfamiliar with the road for the last 20 years; one testified that he had been unfamiliar with the road for at least 10 years. Hughes, his son, and another non-party witness testified that the road had continued to be traveled by property owners and hunters up until the time the gate was erected on the Darnall property. Darnall and Putman, however, testified that they had not known the road to be traveled by the public since Darnall, Champion, and Franks received title to the Darnall property on October 21, 2003.
 

 Ken Allamel, Lauderdale County’s engineer, testified that an official map of Laud-erdale County from 1979 does not indicate the road as a county road. He testified that the road is not a county road and that the county does not maintain the road. It was undisputed that the county was not maintaining the road at the time of the trial. It was also undisputed that, at the time of the trial, the road was well-marked and could be traveled by automobiles.
 

 At the time of the trial, several of the people who owned property adjacent to the road had placed gates or other barriers across the road. Calhoun had installed a cable across the road at both the east and west boundaries of the Calhoun property. Darnall testified that the cables had been there for 15 or 16 years. Tanner had installed gates across the road at both the east and west boundaries of the Tanner property. Darnall further testified that the gates at the boundary of the Tanner property had been there for 10 or 20 years. Darnall and Putman testified that the gates blocked public access to the road. Other witnesses testified that anyone who wanted a key to the locks on the gates could have gotten one.
 

 Darnall testified that both Hughes and Calhoun had asked Darnall’s mother, who was Darnall’s predecessor in title, for permission to use the road to access their properties. The Darnalls introduced an email message from Hughes to Darnall in which Hughes stated that he had asked Darnall’s mother for permission to use the road to access his property. At trial, however, both Hughes and Calhoun denied asking Darnall’s mother for permission to use the road.
 

 
 *1206
 
 The dispute in this case arose in 2006 when Putman erected a gate across the road on the east boundary of the Darnall property and Darnall requested that the Hugheses and Calhoun sign a license agreement in return for the Darnalls’ allowing them access through the gate.
 

 Calhoun testified that the most direct and convenient route for him to access his property was by traveling the road that the Darnalls had blocked. He testified that the only other way to get to his property was by asking another property owner for permission to cross his property. Calhoun testified that the value of his property was $144,000 with access to the road; without access, it would be “pretty close to worthless.” Hughes testified that he had missed two turkey seasons and one deer season because of the Darnalls’ blocking the road. He testified that he could have leased the hunting rights to his 260 acres for approximately $5 an acre, or $1,300. Hughes also testified that he had lost approximately $6,750 in interest from moneys that he could have received if he had not been prevented from using the road to remove timber from his property. Hughes testified that the value of his property is $265,000 with access to the road; without access, the value would be $155,000.
 

 Discussion
 

 I.
 

 The Darnalls’ first argument on appeal is that the road was not public at the time of the trial.
 

 The ore tenus rule is the applicable standard of review on this issue.
 
 See Autry v. Clarke County,
 
 599 So.2d 590, 592 (Ala.1992).
 

 “[T]he ore tenus rule affords a correct and necessary deference to the trial court’s factual findings, recognizing that an appellate court sees only a written record and does not observe the appearance, behavior, and demeanor of live witnesses. The ore tenus rule simultaneously requires the appellate court to review the trial court’s judgment to determine if it is supported by the appropriate level of evidence. The rule thus preserves the safeguards of the standard of proof that was utilized by the trial court without improperly usurping the trial court’s role as fact-finder.”
 

 J.C. v. State Dep’t of Human Res.,
 
 986 So.2d 1172, 1185-86 (Ala.Civ.App.2007).
 

 “A public road is established in one of the following three ways: (1) by a regular proceeding for that purpose; (2) by a dedication of the road by the owner of the land it crosses and a subsequent acceptance by the proper authorities; or (3) by the road’s being used generally by the public for a period of 20 years.”
 
 *1207
 

 Industrial Dev. Bd. of Dothan,
 
 442 So.2d 927 (Ala.1983). ... County maintenance is not essential to the status of a public road.
 
 Davis v. Linden,
 
 340 So.2d 775 (Ala.1976). The placement of a fence across a road does not per se constitute an abandonment of the road.
 
 Purvis v. Busey,
 
 260 Ala. 373, 71 So.2d 18 (1954). Evidence regarding these factors would certainly be pertinent, however, to the abandonment question.”
 

 
 *1206
 

 Fox Trail Hunting Club v. McDaniel,
 
 785 So.2d 1151, 1154 (Ala.Civ.App.2000). In the present case, there was evidence indicating that the road had been used generally by the public for a period of 20 years. On appeal, the Darnalls do not dispute that the road was, at one time, a public road. Instead, they argue that the road is no longer a public road because it had been abandoned.
 

 “Our supreme court discussed the methods by which a public road may be abandoned in
 
 Walker v. Winston County Comm’n,
 
 474 So.2d 1116 (Ala.1985). One method of abandonment is the commencement of a formal, statutory action. §§ 23-4-1 through 23-4-6, Ala.Code 1975. Another is nonuse for a period of 20 years.
 
 See Harbison v. Campbell,
 
 178 Ala. 243, 59 So. 207 (1912). A third alternative, if one road replaces another, is that there can be an abandonment of a public road by nonuse for a period short of the time of prescription.
 
 Floyd v.
 

 
 *1207
 

 Kennedy v. Hines,
 
 660 So.2d 1335, 1339 (Ala.Civ.App.1995).
 

 In this case, the Darnalls contend that the road had been abandoned by “nonuse for a period of 20 years.” The burden was on the Darnalls to prove that the road had been abandoned by clear and convincing evidence.
 
 Autry,
 
 599 So.2d at 591.
 

 At trial, Darnall and Putman testified that the public had been prevented from using the road because various property owners had erected barriers across the road. Specifically, Darnall testified that the road had been blocked for 15 or 16 years by cables placed at the Calhoun property lines and for 10 or 20 years by gates erected at the Tanner property lines. Hughes, however, testified that anyone who wanted a key to the locks on the gates at the Tanner property lines could have gotten one. There was testimony indicating that property owners along the road and hunters had used the road up until 2006 when the gate was erected on the Darnall property.
 

 In
 
 Fox Trail,
 
 this court concluded that the road at issue had not been abandoned because, although the use of the road at issue had decreased, “local landowners, hunters, and timber harvesters ha[d] continued to use it.” 785 So.2d at 1155.
 
 See also Auerbach v. Parker,
 
 544 So.2d 943, 946 (Ala.1989) (“The fact that travel on the road may have decreased does not work an abandonment so long as it is open for use by the public generally and is being used by those who desire, or have the occasion, to use it.”). In addition, we note that the fact that gates and cables had been erected across the road does not necessarily indicate that the road had been abandoned when, as in this case, the evidence indicates that the road had continued to be used by those who desired to do so.
 
 See Powell v. Hopkins,
 
 288 Ala. 466, 472, 262 So.2d 289, 294 (1972) (“[Placing a gap or gate across a way to control livestock would not cause a road to lose its character as a public way when it was evident that by placing such obstacle there was no interruption of the way by those traveling it.”). Even if the gates and cables had succeeded in blocking public use of the road, we cannot conclude that there was clear and convincing evidence indicating that those gates and cables had been in existence for 20 years.
 
 See Smith v. Smith,
 
 482 So.2d 1172, 1175 (Ala.1985) (holding impediment to traveling the road at issue must have existed for 20 years to support claim of abandonment).
 

 The Darnalls point out that the county had not maintained the road in more than 20 years. We note, however, that “it is not essential to the status of a public road that it be maintained by the county in which the road is located.”
 
 Fox Trail, 785
 
 So.2d at 1154. Even without the benefit of county maintenance, at the time of the trial, the road was well-marked and could be traveled by automobiles. The Darnalls also make much of the fact that most of the Hugheses’ witnesses had not been familiar with the road for the past 20 years. We point out, however, that it was the Dar-nalls’ burden, not the Hugheses’, to prove nonuse for 20 years. In addition, the Dar-nalls maintain that the use of the road had been permissive. We note, however, that the evidence was disputed on this issue.
 
 *1208
 
 Even if the use had been permissive, the record does not contain clear and convincing evidence indicating such permissive use for a period of 20 years.
 

 Based on the foregoing, we hold that the trial court did not err in concluding that the Darnalls had failed to present clear and convincing evidence indicating that the road had been abandoned by nonuse for a period of 20 years and, therefore, that the road was a public road.
 

 II.
 

 The Darnalls’ second argument is that the trial court erred by dismissing Tanner, by making no express ruling with respect to Lauderdale County, and by failing to sufficiently describe the road.
 

 With regard to the Darnalls’ arguments regarding Tanner and Lauderdale County, we note that the Darnalls did not file a cross-claim against either of those parties. Accordingly, we conclude that the Darnalls have no standing to challenge the trial court’s action or inaction with regard to those parties.
 
 See Otts v. Gray,
 
 287 Ala. 685, 691, 255 So.2d 26, 31 (1971) (holding that a plaintiff who had asserted no claim against a third-party defendant lacked standing to complain of the court’s action with regard to the third-party defendant).
 

 In support of their argument that the court erred by failing to sufficiently describe the road, the Darnalls cite
 
 Limbaugh v. Comer,
 
 265 Ala. 202, 90 So.2d 246 (1956). In
 
 Limbaugh,
 
 the supreme court held:
 

 “A decree establishing the location of a boundary line between the lands of coterminous owners must be reasonably certain within itself or by reference to the pleadings, evidence or documents filed in the cause, and the decree must be so certain that the line may be located and marked by an officer of the court who may be appointed to so mark the line without reference to extrinsic evidence or the use of his own discretion or by drawing his own conclusions as to any fact determinant of the true location of the line.”
 

 265 Ala. at 204, 90 So.2d at 247. The Darnalls cite no case setting forth any requirements for determining the location of a public road. We note that, in a boundary-line dispute, the location of the line is the issue to be decided by the trial court. In the present case, however, there was no dispute as to the location of the road. Instead, the issue for the trial court to decide was whether that road was public. Accordingly, we cannot hold the trial court in error on this point.
 

 III.
 

 Next, the Darnalls argue that the Hugheses and Calhoun were estopped from arguing that the road was a public road because, they say, before the complaint was filed, the Hugheses and Calhoun had indicated that the issue was whether they had an easement or license to use the road. The Darnalls assert that the issue regarding whether the road was public was not asserted by the Hugheses and Calhoun before the complaint was filed in this case.
 

 One of the cases cited by the Darnalls in support of their argument is
 
 Mazer v. Jackson Insurance Agency,
 
 340 So.2d 770 (Ala.1976). In
 
 Mazer,
 
 the supreme court set out the three elements of equitable estoppel: (1) “ ‘[t]he actor, who usually must have knowledge of the true facts, communicates something in a misleading way,’ ” (2) the other party “ ‘relies upon that communication,’ ” and (3) the other party “ ‘would be harmed materially if the actor is later permitted to assert any claim inconsisten[t] with his earlier conduct.’ ”
 
 *1209
 
 340 So.2d at 773 (quoting Dobbs,
 
 Remedies
 
 § 2.3 (1973)). In the present case, the Darnalls have not shown that they relied upon the Hugheses’ and Calhoun’s failure to assert, before the complaint was filed, that the road was public. Because the Darnalls have failed to prove at least one of the elements of equitable estoppel, we conclude that the trial court did not err in failing to apply that principle in this ease.
 

 IV.
 

 The Darnalls next argue that the trial court erred in awarding damages to the Hugheses and Calhoun because, they say, the Hugheses and Calhoun had acknowledged that the Darnalls were the owners of the property upon which the gate had been erected and because the Hugheses and Calhoun were aware that they had no access to their properties when they purchased them. We have already determined that the trial court did not err in concluding that the road was a public road. Accordingly, the Darnalls’ argument that they owned the property upon which the gate had been erected is flawed. The Darnalls’ obstruction of the public road was a violation of law.
 
 See Beverly v. State,
 
 28 Ala.App. 451, 453, 185 So. 768, 770 (1939). Further, although the Dar-nalls argue that the Hugheses and Calhoun were aware that they had no access to their properties when they purchased them, we note that because the trial court determined that the road was public, the Hugheses and Calhoun did, in fact, have access to their properties.
 

 The Darnalls further argue that the damages awarded—$15,000 to the Hugheses and $5,000 to Calhoun—were speculative, especially since the Hugheses and Calhoun had used their properties in spite of the Darnalls’ erection of a gate across the road. We agree that the damages awarded were speculative. The trial court specified that the damages awarded were compensatory, not punitive. Upon our review of the record, we conclude that the amount of the compensatory damages awarded is not supported by the evidence. Notably, even in the Hugheses and Calhoun’s trial brief, they argued that the Hugheses had sustained $9,262.50 in damage but did not argue that Calhoun had sustained any damage. Because we conclude that the damages awards were not supported by evidence in the record, we must reverse the trial court’s judgment on this issue.
 
 See, e.g., Blair v. Cooper,
 
 392 So.2d 1205, 1207 (Ala.Civ.App.1981).
 

 V.
 

 Additionally, the Darnalls argue that the trial court erred in admitting a “Google Earth” aerial photograph and an Alabama Atlas and Gazetteer as exhibits. We need not determine whether these exhibits were admissible, because, even if their admission was error, the Darnalls have not shown how the error was injurious to their ease.
 
 See New Plan Realty Trust v. Morgan,
 
 792 So.2d 351, 363 (Ala.2000) (holding that the appellants bear the burden of showing that an error in the admission of evidence has “ ‘ “probably injuriously affected substantial rights of the [appellants]” ’ ” (quoting
 
 Atkins v. Lee,
 
 603 So.2d 937, 946 (Ala.1992), quoting in turn Rule 45, Ala. R.App. P.)). They argue that the Google Earth map showed “the existence of the road,” which, they say, is the ultimate issue in the case. We note, however, that it was not disputed that the road existed. The issue was whether the road was public, and neither of the exhibits in question indicated whether the road was a public road. Accordingly, we conclude that any error was harmless and was thus not reversible error.
 
 See
 
 Rule 45, Ala. RApp. P.
 

 
 *1210
 
 VI.
 

 Finally, the Darnalls argue that the trial court erred in awarding the Hugheses and Calhoun the costs of service by publication because, they say, the trial court was without jurisdiction to award the costs of service by publication because the time for ruling on postjudgment motions had run, pursuant to Rule 59.1., Ala. R. Civ. P. The award of costs, however, “is merely incidental to the judgment and may be done at any time prior to issuance of execution.”
 
 Littleton v. Gold Kist, Inc.,
 
 480 So.2d 1236, 1238 (Ala.Civ.App.1985). Thus, we conclude that the trial court had jurisdiction to assess the costs of service by publication against the Darnalls.
 

 The Darnalls also argue that the cost of service by publication should not have been taxed against them because the Hugheses and Calhoun failed to show that they had made diligent efforts to serve Darnall and Franks. “The taxation of costs under Rule 54(d)[, Ala. R. Civ. P.,] rests in the discretion of the trial court, and its decision will not be reversed in the absence of a clear abuse of discretion.”
 
 Miller v. Thompson,
 
 844 So.2d 1229, 1233 (Ala.Civ.App.2002).
 

 In the present case, the Hugheses and Calhoun’s attorney submitted an affidavit stating that Darnall had avoided service and that the residence of Franks was unknown and could not be ascertained after diligent efforts.
 
 [2]
 
 In cases such as the present case, Rule 4.3, Ala. R. Civ. P., requires a plaintiff to show that a defendant has avoided service before service by publication is allowed. It does not, however, require a plaintiff to show that diligent efforts had been made to serve a defendant in such cases. Rule 4.3(d)(1), Ala. R. Civ. P. Accordingly, the Darnalls’ argument is flawed, and we cannot hold the trial court in error on this point.
 

 Conclusion
 

 Based on the foregoing, we reverse the trial court’s award of damages and remand this cause for the trial court to enter a judgment that is supported by the evidence. We affirm the trial court’s judgment in all other respects.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 . The trial court did not expressly mention Lauderdale County in its judgment; however, no claim was made specifically against that entity. The only claim that could affect the rights and liabilities of Lauderdale County was the claim for declaratory relief; that claim was resolved. A judgment is final if it disposes of all claims against all parties.
 
 See
 
 Rule 54(b), Ala. R. Civ. P. Because the only claim relating to Lauderdale County was disposed of, the fact that Lauderdale County was not expressly mentioned in the judgment does not affect the finality of the judgment in this case. Neither Tanner nor Lauderdale County is a party to this appeal.
 

 [2]
 

 . Although Rule 4.3, Ala. R. Civ. P., mandates a showing that a defendant has avoided service in cases such as the present case, the Darnalls have failed to argue that issue. Accordingly, we do not address it.