299 So.2d 717

**Homer HINDS et al.**

v.,

**Annie Laura SLACK.**

**SC 736.**

Supreme Court of Alabama.

Aug. 29, 1974.

James S. Hubbard, Anniston, for appellants.

G. Coke Williams, Anniston, for appellee.

FAULKNER, Justice.

This proceeding was brought by complainants to quiet title to a lot described as "Lot 4, in Block 2, as shown by Allen and Hunter's Survey of property of North Anniston Realty Company on record in the Probate Office of Calhoun County, Alabama, more particularly described as follows . . . " The trial judge found title to the contested part of the lot to be in the respondent.

Homer Hinds purchased the property from respondent's mother and sister, who were also the owners of Lot 3, which adjoined Lot 4 on the north side. Apparently, there was some dispute whether there was ever any intention to convey Lot 4 in its entirety or simply sell the old garage which was situated on the property at that time. Until 1952, Lots 3 and 4 were, it seems, treated as a single tract by previous owners, rather than two distinct pieces of property. Nevertheless, the description in the deed specifically deals with all of Lot 4. The trial court found that there was a wire fence between the two lots in 1952. The fence was not on the "true" boundary, but encroached into Lot 4's north side some 36 to 38 feet. Hinds tore down the old garage and erected a home in its place. In 1958, respondent had a chain link fence constructed approximately in the same location as the older fence. This fence ran within a couple of feet from the side of Hinds' home. Mrs. Hinds, respondent's sister, urged her husband not to make an issue of the matter. There was a gate in the fence next to the house. Hinds and his family were permitted to come and go at will. Hinds apparently used a clothes-

line on the other side of the fence, and occasionally cut grass in the area. At that time none of the parties were aware of the actual boundary between Lots 3 and 4. Hinds did know that the fence was on his property, but not to what extent.

Things continued in a generally harmonious note until 1969. In the meantime, the first Mrs. Hinds had died and Homer Hinds had remarried. Respondent Slack had purchased the interests of her mother and sister in Lot 3, and as was discovered later, also had deeds from them covering Lot 4. At about this time, Hinds began to make furtive demands to respondent that something be done about the fence. In 1970, Hinds had a survey made and for the first time learned that the true line actually cut off the back porch of the house on Lot 3. He brought this to the attention of Mrs. Slack, who informed him of the deeds she held, concluding that he owned nothing in either of the lots. In 1971, the complainants filed the bill to quiet title because of respondent Slack's claim. Mrs. Slack filed a cross-bill claiming an interest in the property based on the deeds in her possession, which were executed after the conveyance to Hinds and the recordation thereof.

After hearing a voluminous amount of testimony, the trial judge dismissed the complaint and the cross-bill while making the following order:

" . . . the Court finds that the complainants own only that part of Lot 4, Block 2 as shown by Allen and Hunter' survey of property of North Anniston Realty Company on record in the Probate Office of Calhoun County that lies south of the chain link fence now in existence which was erected no later than 1958, which apparently replaced an older fence at the same approximate location. The Court further finds that the property north of the chain link fence has always been used in connection with Lot 3 in Block 2 and has been and is

now in possession of the respondent or her predecessors in title."

Complainants argue that the court erred in dismissing the bill of complaint and in making further findings after having done so. These contentions are the substance of Assignments of Error I, II, and III.

█ It has been stated time and again that in order to maintain a bill to quiet title, the complainant must be in "peaceful possession" of the property in question. This possession may be actual or constructive, as in the case of one who has legal title, but no actual possession. Title 7, § 1109, Code of Alabama, 1940, Recompiled 1958; Chestang v. Tensaw Land & Timber Co., 273 Ala. 8, 134 So.2d 159 (1961); City of Montgomery v. Brown, 285 Ala. 64, 228 So.2d 820 (1969); Ford v. Washington, 288 Ala. 194, 259 So.2d 226 (1972).

█ There is no dispute that Hinds is the legal title holder of Lot 4. His deed bears that description. It was duly executed and properly recorded, prior to any other conveyance. In this regard he would be normally in constructive possession of all of Lot 4 by operation of law. However, our cases have said that a legal title holder does not meet the test of constructive possession by virtue of his title, when someone else is in actual possession. George E. Wood Lumber Co. v. Williams, 157 Ala. 73, 47 So. 202 (1908); Barry v. Thomas, 273 Ala. 527, 142 So.2d 918 (1962). In our view, Hinds never had actual or constructive possession of that part of Lot 4 north of the old wire fence or the newer chain link fence. The owners of Lot 3 have always used that area, and considered it to be their own. Hinds never made any more than a permissive use of the property even though it was included in his deed. Thus, at least as to the part of Lot 4 north of the fence, which appears to be the only area *really* involved in this dispute, Hinds does not meet the requirement of "peaceful possession," which is the sine qua non of maintaining a bill to quiet title.

■ Of course the ultimate nature of a party's possession is a question of fact. The concept is one which was aptly described in *Wood Lumber Company,* and has been quoted on numerous occasions by this court as a definition of " 'peaceable' possession." We will not again restate this word for word. The distinction between a "peaceful" or "peaceable" possession and what has been termed a "disputed, hostile or scrambling" possession, which will not support a bill to quiet title, is a difference in kind. In the former, an adverse party may be denying the complainant's right to possession, but in the latter there is a denial of the *fact* of his actual possession. Both parties are claiming actual possession or are "scrambling" for it. *George E. Wood Lumber Company;* Chestang v. Tensaw Land & Timber Co. Therefore, we can find no error in the trial court's dismissal of the bill since Hinds clearly failed to show "peaceful possession" of the property north of the fence, as that term has been defined by this court.

■ The next logical question concerns the problem of whether or not the trial court erred in quieting title to the disputed property in the respondent, once the complainant failed to make his case of peaceful possession. At one time, we took the position that the jurisdiction of the trial court was destroyed in effect when it dismissed the complainant's bill. Buchmann Abstract & Investment Co. v. Roberts, 213 Ala. 520, 105 So. 675 (1925). This rule was laid to rest in the case of Chestang v. Tensaw Land & Timber Co., on rehearing. In this case it was said that:

."Where the complainant brings the respondent into court under an allegation that complainant is in peaceable possession, and respondent sets up his claim as required by the statute, and then complainant fails to prove his peaceable possession, he should be estopped to urge a lack of jurisdiction when the respondent proves both peaceable possession and

better title. Myers v. Moorer, 273 Ala. 18, 134 So.2d 168."

This leaves the trial court with the following three alternatives as enumerated in *Tensaw.* First, if there is only a scrambling possession with neither side having actual or constructive possession, in an undisputed fashion, the bill(s) should be dismissed. If the complainant fails to make his proof of peaceful possession, he can not have title quieted in him, without regard to the situation of the respondent. And thirdly, if the respondent has made an adequate answer and the proof shows that he has better title *and* peaceful possession, then title should be quieted in the respondent then and there.

■ The extent of this discussion is that the trial court was not per se without jurisdiction to quiet title to the area of Lot 4 in question to the respondent Mrs. Slack, assuming a proper legal reason existed for doing so. This action can be easily supported on a theory of adverse possession by the respondent and her predecessors in title. Where one coterminous owner erects a line fence and holds actual and adverse possession to it for a continuous period of ten years, he obtains title to the property enclosed by his fence. Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423 (1964). In the case of coterminous owners, it has been held that the other statutory requirements set out in Title 7, § 828, Code of Alabama, 1940, Recompiled 1958, such as color of title, annually listing the land for taxation, or title by descent cast are unnecessary to sustain a claim by a coterminous owner. Lay v. Phillips, 276 Ala. 273, 161 So.2d 477 (1964); Willliams v. Davis, 280 Ala. 631, 197 So.2d 285 (1967). The present link fence was found by the trial court to have been constructed in 1958. Since that time the respondent and her predecessors in title possessed and used all the area enclosed by that fence. They allowed Hinds to come and go and perform minor functions on the land, but never recognized his right of

**30**

ownership to property therein, and it is not clear from the testimony that he ever actively exerted any such claim until 1970, when his survey was taken. By that time, the respondent and her predecessors had been in adverse possession for 12 years. When the controversy began to stir, they put a lock on the gate by the Hinds home and curtailed his use of the yard on Lot 3 altogether. That the possession of Mrs. Slack was adverse to Hinds goes without saying. A fence enclosing land is an outstanding symbol of claim of possession. Graham v. Hawkins, 281 Ala. 288, 202 So. 2d 74 (1967). Thus the court did not err in decreeing that title to the property north of the chain link fence, to include that portion within Lot 4, was in the respondent.

■■ Assignments of Error IV and V deal with the court's findings that the chain link fence now in place replaced an older fence in the same approximate location and that the property to the north of the fence had always been used in connection with Lot 3. The court's findings on these points were based on testimony taken ore tenus and we presume them to be correct unless plainly wrong or manifestly unjust. Nothing in the pertinent testimony we have read indicates that either of these conditions exists. There was considerable conflict with regard to many of the material issues, and there is sufficient credible evidence to support the decisions reached by the trial judge, who not only heard all witnesses, but was able to observe their demeanor on the stand. See Patterson v. Brooks, 285 Ala. 349, 232 So.3d 598 (1970); Dennison v. Claiborne, 289 Ala. 69, 265 So.2d 853 (1972).

Assignment VI dealing with the admissibility of certain evidence was not argued in brief by the complainant and is deemed waived.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD and MADDOX, JJ., concur.