Lottie Woodham and her daughter Frankie W. Johnson filed a complaint against Mt. Gilead Church Cemetery, a corporation, and against the trustees of the corporation. The complaint included a count in trespass, a bill to quiet title, and a count in ejectment. The trial court ruled for the plaintiffs.
In 1893, J.J. Herndon and his wife Kitty Ann Herndon deeded to "Mt. Gilead Church and their successors of the Primitive Baptist faith and order" a described parcel of land comprising "four acres more or less."[1] The deed included the following condition: "It is expressly agreed that if the said Mt. Gilead Church should cease to exist as a church of the Primitive Baptist faith and order, the said lot of land shall revert back to original tract."
The Woodhams claim to own the land by virtue of a deed from S.M. Powell and wife, Mattie Powell, to Mrs. Woodham and her husband, dated January 15, 1936. This *Page 364 
deed conveyed 241 acres, including the northeast quarter of the southwest quarter, less fourteen acres on the east side, of Section 25, T. 11, R. 20. The church property lies in this quarter-quarter section. Old highway 231 runs in a north-south direction in the eastern part of the quarter-quarter. The church property lies on the west side of the road. See Appendix A.
Mrs. Woodham moved onto the property near the old church in 1929. She and her husband began paying Mr. Powell for the property about this time. In January 1932, the Mt. Gilead Church was destroyed in a storm. Mr. Powell used some of the lumber and gave the rest of it to the Woodhams. Mrs. Woodham testified that the building had not been used for church services since she first moved into the area in 1927.
There was, however, a cemetery on the church property, and people were occasionally buried there up until the current controversy arose. The Woodhams cut timber from the church property, except in the immediate area of the graves. In 1979, they had the area cleared for planting pine trees. In 1980, some fifteen or twenty individuals, most of them with relatives in the cemetery, held meetings at the cemetery, removed the trees planted by, and a fence erected by, the Woodhams, and formed the Mt. Gilead Church Cemetery corporation. The Woodhams instituted the instant lawsuit.
The defendants argue that the cemetery was an integral part of the church and thus that the title conveyed to the Mt. Gilead Church continues in existence. We find no merit to this argument. The deed to the church mentioned only a church, not a cemetery. Moreover, defendants' exhibit showing dates of burials shows only one between 1923 and 1960. Several took place in the 1960's and 1970's, but the testimony indicated that these were not Primitive Baptist funerals, and none of the defendant trustees who testified were Primitive Baptists.
The allegations of the complaint in the count denominated "Bill to Quiet Title" are decisive in the resolution of this appeal:
 "9. The plaintiffs are the owners of and in the peaceful possession of the [church] property described [by reference to the iron pins — see footnote 1].
 "10. The defendant claims, or is reputed to own the said lands or a part thereof, or an interest therein by virtue of the quitclaim deed attached as Exhibit D to this complaint.
 "11. There is no suit pending to enforce or test the validity of the defendant's title or claim to or upon the said lands.
 "WHEREFORE, the plaintiffs pray that the defendant be required to set forth and specify [its] title, claim, interest, or encumbrance, and by what instrument the same is derived and created and that upon a hearing of this cause, the plaintiffs' title to said lands be quieted."
This language precisely tracks the requirements for an inpersonam bill to quiet title found at Code 1975, §§ 6-6-540 and -541:
 "§ 6-6-540. Right of action to settle title to lands by person in peaceable possession thereof.
 "When any person is in peaceable possession of lands, whether actual or constructive, claiming to own the same, . . . and his title thereto, or any part thereof, is denied or disputed or any other person claims or is reputed to own the same, . . . and no action is pending to enforce or test the validity of such title, claim or encumbrance, such person . . . so in possession, may commence an action to settle the title to such lands and to clear up all doubts or disputes concerning the same."
"§ 6-6-541. Contents of complaint.
 "The complaint authorized by section 6-6-540 must describe the lands with certainty, must allege the possession and ownership of the plaintiff and that the defendant claims, or is reputed to claim, some right, title or interest in, or encumbrance upon, such lands and must call *Page 365 
upon him to set forth and specify his title, claim, interest or encumbrance and how and by what instrument the same is derived and created."
A suit to quiet title under these Code sections requires peaceable possession and a claim of title, not actual ownership. Standard Contractors Supply Co. v. Scotch, 247 Ala. 517, 25 So.2d 257 (1946). Isolated acts by the defendant, indicating possession but not amounting to interference with plaintiff's peaceable possession, do not defeat plaintiff's claim. Denson v. Gibson, 392 So.2d 523 (Ala. 1980); Adams v.Bethany Church, 380 So.2d 788 (Ala. 1980).
Mrs. Woodham testified that she had always regarded all of the land west of old highway 231 to be hers, and that the fourteen acres excepted from her deed was the land east of the road. Indeed, the trial court held that the property had been assessed to the Woodhams since 1937, and the property tax records reflected the exclusion of fourteen acres on the east side of the quarter-quarter section. Both peaceable possession and claim of title are indicated by the evidence that the Powells and Woodhams appropriated the lumber from the storm-damaged church and the evidence that the Woodhams cut timber from the land over the years, including large-scale operations and plantings shortly before the suit was brought. It is the character of possession at the time suit is commenced which is decisive, Denson v. Gibson, supra, but the Woodhams' possession continued at least up to the time suit was filed.
The question of the fourteen acres exempted from the Woodhams' deed is significant, however. In 1894, J.J. Herndon and his wife deeded the following property to their son Winston:
 "NE 1/4 of SW 1/4 Sec. 25 T. 11 R. 20 Less 15 acres 10 acres of which was sold to W.J. Chancey which lot or part lies on the East side of Troy and Orion Road [old highway 231], 5 acres of which was deeded to Mt. Gilead Church and for Burying Ground on West side of said Road. . . ."
The Woodhams' chain of title was not introduced into evidence. If it traces to this deed, the fourteen acres excluded from their deed may well have included the church property. They do, however, "claim to own" the land sufficiently for purposes of this action.
The fee simple determinable conveyed to Mt. Gilead Church left a possibility of reverter in J.J. Herndon. Burby, RealProperty, § 170 (2d ed. 1954). Upon the expiration of the church, the property reverted to J.J. Herndon's heirs. On June 2, 1980, George W. Herndon and his wife executed a deed to the trustees of the cemetery corporation. Although George Herndon testified that he was J.J. Herndon's grandson, defendants put on no evidence regarding J.J. Herndon's heirs, so they have not "specified and set forth the title" which they might claim under the quitclaim deed. Code 1975, § 6-6-542.
Although the quitclaim deed was included as an exhibit to the complaint and mentioned (but not introduced) at trial, it was not the basis on which defendants sought to establish title so as to defeat the Woodhams' quiet title action. They proceeded on the theory that the continued, though occasional, burial of people in the cemetery was a continuation of the purpose for which J.J. Herndon deeded the land to the Mt. Gilead Church and that the defendant corporation was the successor in interest to the church. The trial court correctly held that the church ceased to exist at least by 1932 and that title then reverted out of the church.
The trial court held that title to the church property "rests in the Plaintiffs and not the Defendants." This judgment does not precisely follow the form specified in Code 1975, §6-6-543, which says that the trial court shall
 "finally adjudge whether the defendant has any right, title or interest in, or encumbrance upon, such lands . . . and such judgment is binding and conclusive upon all the parties to the action." *Page 366 
We point this out only to note that the judgment is binding only against the defendant corporation and its trustees. By the nature of the action, absolute judgment that title rests in the plaintiffs should not be entered. The judgment is not res judicata against, for example, the heirs of J.J. Herndon. The judgment should be modified to read that defendants have no right, title, or interest in the property.
Defendants raise other assertions of error concerning the trespass and ejectment aspects of the judgment, but we pretermit discussion of these because the above disposes of the merits of the action. The trial court's judgment is affirmed as modified.
AFFIRMED AS MODIFIED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.
[1] The lot was described with a pine tree as the point of beginning. At some point iron pins were placed which at least approximated the corners of the lot described in the deed to Mt. Gilead Church, but the land bounded by these pins comprises five acres. In most cases, we shall refer to this four- or five-acre lot as "the church property."
 APPENDIX A
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 367