This case presents a property dispute. This is the second time it has been before this Court. Terry Kay Simmons, T.R. Simmons II, Albert H. Simmons, Josephine S. Pankey, Julia Ann S. Cleage, John Gregory Simmons, and Anna E. Simmons (all hereinafter referred to as the "Simmonses") sued Everett L. Almon, Cullman Wholesale, Inc. ("Cullman"), and various fictitiously named parties, to quiet title to real estate situated in Walker County, Alabama. Ark Land Company ("Ark") leased the property from Simmonses and is also a plaintiff in this case. *Page 1033 
On March 4, 1986, Almon filed a motion to dismiss and a motion for summary judgment. Ark also filed a motion for summary judgment. The trial court entered a summary judgment in favor of Ark on June 12, 1986, declaring that title to the surface of the property was vested in the Simmons plaintiffs, subject to the leasehold interest of Ark. Almon was released from the action because he had deeded his interest in the property to Cullman. Cullman appealed.
On February 5, 1988, this Court in Cullman Wholesale Co. v.Simmons, 530 So.2d 727 (Ala. 1988), reversed the summary judgment and remanded the case with instructions to the trial court to conduct a trial on the issue of peaceable possession.
On April 2, 1991, the trial court conducted an ore tenus
nonjury trial and found the following facts:
 "On August 6, 1951, Clayton Sanders conveyed the following described property to Stephen Sanders by quitclaim deed:
 " 'The SE 1/4 of the NE 1/4 and the NE 1/4 of the SE 1/4, Section 36, Township 14 South, Range 9 West, being 80 acres. Mineral and mining rights excepted. Above lands being in Walker County, Alabama.'
 "On September 21, 1961, the Internal Revenue Service filed a Notice of Federal Tax Lien in favor of the United States upon all the property and rights to property belonging to Stephen Sanders, Transferee, due to the failure of Clayton Sanders to pay $8,798.72 in federal income taxes assessed during the years of 1944 through 1949. The District Director of Internal Revenue sold the above property on November 15, 1963 to Cleveland Lumber Company (Cleveland) for $801.00. A quitclaim deed was executed to this effect on December 16, 1964, after the redemption period had expired. Said deed was recorded on December 30, 1964.
 "On June 15, 1964, the tax collector of Walker County purported to sell the 80 acres of surface to the State of Alabama for the collection of delinquent ad valorem taxes owed by Stephen Sanders for the year 1963. There is no evidence that notice of the State tax sale was given to the United States. The State executed a deed to the 80 acres to Everett L. Almon on January 21, 1976. Everett L. Almon conveyed the property to C.W. White and R.H. Culpepper on March 14, 1976, who, along with their wives, conveyed the same to Defendant Cullman on May 24, 1978.
 "On January 5, 1982, the partners of Cleveland Lumber Company executed a series of warranty deeds which conveyed the entire interest of Cleveland Lumber Company in the subject property to the Plaintiffs.
 "Ark Land Company, intervenor, has leased said property from plaintiffs and their predecessor in title continuously since September of 1970."
The trial judge was presented with conflicting testimony concerning the actual possession of the property prior to the filing of this suit and concerning who had title to the property. After hearing all of the evidence, the trial court concluded that the plaintiffs were in peaceable possession of the property when they filed their suit and therefore were entitled to bring their action to establish title under the Grove Act, Ala. Code 1975, §§ 6-6-560 and 6-6-561. The trial court then determined that the plaintiffs had established title by adverse possession, and that the plaintiffs had superior title to the property.
Cullman argues that the trial court erred in quieting title in the plaintiffs because, it argues, the trial court's findings of fact were clearly erroneous and its judgment was based on insufficient evidence. The issue in this case is whether the evidence was sufficient to support the trial court's conclusions.
Where evidence is presented to the trial court ore tenus, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.Gaston v. Ames, 514 So.2d 877, 878 (Ala. 1987); Cougar Mining *Page 1034 Co. v. Mineral Land Mining Consultants, Inc., 392 So.2d 1177
(Ala. 1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Gaston, supra; Smith v. StyleAdvertising, Inc., 470 So.2d 1194 (Ala. 1985); League v.McDonald, 355 So.2d 695 (Ala. 1978).
 I. PEACEABLE POSSESSION
To maintain an action to quiet title to real property, the plaintiffs must prove that, at the time of the filing of the complaint, "they were in actual or constructive possession of the property, and that their possession was peaceable as distinguished from scrambling or disputed." Denson v. Gibson,392 So.2d 523, 524 (Ala. 1980); Adams v. Bethany Church,380 So.2d 788 (Ala. 1980); Hinds v. Slack, 293 Ala. 25,299 So.2d 717 (1974). The distinction between peaceable possession and scrambling possession is that "in the former, an adverse party may be denying the complainant's right to possession, but in the latter there is a denial of the fact of his actual possession." Adams, 380 So.2d at 791; Denson, supra; Adams, supra; and Hinds, supra.
In this case, the trial court concluded that the Simmonses and their predecessor in title had been in peaceable possession of the property, based on the testimony of David George, A.R. Simmons, and John Kilgore, regarding various acts of possession by Ark, including the drilling of core holes, marking the boundary with paint, the building and traversing of roads, checking for forest infestation, posting of mining permit signs, and monthly inspections to prevent trespassing. The trial court also heard testimony that no one with defendant Cullman had visited the property prior to the filing of this suit, that Almon had visited the property only once prior to the filing of this suit, and that prior to the filing of this suit no one had denied the fact of Ark's possession of the property and no one had challenged Ark's right to use the property.
Cullman argues that the Simmonses were not in peaceable possession because, it argues, it alone was assessed the taxes and it alone paid the taxes on the subject property from 1980 to 1982, and that its predecessor in title, Almon, had objected in writing to the plaintiffs' predecessor's mining of coal on the property without his permission. Cullman also relies on Almon's testimony that he went to the property in 1976, that at that time it was abandoned, and that the plaintiffs never posted any signs to indicate their ownership of the property.
This Court has held that isolated acts by a defendant that do not interfere with the plaintiff's peaceable possession do not defeat the plaintiff's right to bring an action to quiet title.Denson, supra, Adams, supra, and Ford v. Washington, 288 Ala. 194, 259 So.2d 226 (1972). The plaintiff must show that he was in actual possession of the property. Ford, supra. Further, a defendant's going to property and claiming title to it when it is in the possession of the plaintiff does not constitute "possession" that would defeat an action to quiet title. Adams, supra. Finally, payment of taxes is not sufficient to defeat the possessor's right to bring an action to quiet title.Ford, supra. The evidence argued by Cullman does not overcome the trial court's holding that the Simmonses were in peaceable possession.
Cullman further argues that the trial court's ruling on this issue was clearly erroneous because, it says, the Simmonses failed to show evidence of color of title, citing Ala. Code 1975, § 6-6-560. Cullman asserts that the showing of color of title could be made only from the copies of the deeds entered into evidence. Cullman states that none of the deeds was authenticated, as it says was required by Rule 44(a)(1), A.R.Civ.P., and that, therefore, the deeds could not be considered evidence of color of title.
According to Ala. Code 1975, § 6-6-560, a person can file a complaint to establish a right or title to land when he "claims . . . to own [the land] or any interest therein, and is in the actual, peaceable possession of the land, or if neither he nor any other person is in the actual possession of the lands and *Page 1035 
he holds, and has held, color of title to the lands," subject to certain further conditions. In this case, the Simmonses presented sufficient evidence to enable the trial court to determine that they were in peaceable possession of the property. Further, Rule 44(e), A.R.Civ.P., states that "[e]very instrument permitted or required by law to be recorded in the office of the judge of probate, and which has been proved or acknowledged in the manner provided by law in force at the time of its execution, may be read in evidence without further proof and shall be prima facie evidence of the facts therein stated." Therefore, the trial court's determination that it had jurisdiction under Ala. Code 1975, §§ 6-6-560 and 6-6-561, was correct. Cullman's argument as to color of title is without merit.
 II. ADVERSE POSSESSION
With regard to the adverse possession claim, the trial court concluded that the plaintiffs were entitled to the property on the ground of adverse possession, based on a finding that "the plaintiffs and their predecessor and lessee had color of title to the property and, for ten years prior to commencement of the suit, had actual, exclusive, open, notorious and continuous possession of the land."
Cullman argues that the plaintiffs did not establish title under this theory, because, it says, they failed to show payment of taxes for the requisite 10-year period and failed to show adverse possession of this wild and unimproved property. Cullman argues that drilling holes, marking boundaries, and having someone look after the land is not sufficient possession, under the rule set forth in Tensaw Land TimberCo. v. Rivers, 244 Ala. 657, 15 So.2d 411 (1943).
Dan Crittendon, an employee of the revenue commissioner for Walker County, testified, based upon the records, that the plaintiffs and their predecessor in title had assessed the property for taxes continuously since 1971. Crittendon further expressed a belief that the plaintiffs and their predecessor had actually paid ad valorem taxes on the property, because, he said, otherwise the tax commissioner would not have continued to assess the property. In Tensaw Land Timber Co., supra, this Court held that "[m]ere casual acts of ownership as where one authorized persons to go upon land to cut timber, payment of taxes, and requesting another to look after the premises do not constitute adverse possession," but this Court went on to say that "there may be certain sorts of acts of possession, which, if continued and uninterrupted, will be sufficient [to constitute adverse possession], though the land is wild."244 Ala. at 659, 15 So.2d at 413-14. After reviewing the record, we conclude that there was sufficient evidence to support the trial court's conclusion that the plaintiffs satisfied the requirements for establishing title by adverse possession.
 III. SUPERIOR TITLE
Finally, the trial court concluded that the plaintiffs had superior title to the property, based on the findings 1) that the plaintiffs took title from the United States, which had a superior lien on the property as of the date of the state tax delinquency, and 2) that the State tax sale was void because the State failed to notify the United States of its tax sale. Cullman argues that the United States did not have superior title to the property because, it says, at the time of the sale the property did not belong to the taxpayer, Clayton Sanders, but to his son, Stephen Sanders. Cullman asserts that Clayton and Ellen Sanders had conveyed title to the property in question some 10 years before the filing of the federal tax lien, and, therefore, that Clayton Sanders did not have an interest in the property that could lawfully be attached by the United States through a federal tax lien. In Keely v. Sanders,99 U.S. 441, 443, 25 L.Ed. 327 (1878), the Supreme Court held that "the commissioner's certificate of sale [is] prima facie evidence of the regularity and validity of the sale and of the title of the purchaser." Cullman failed to present sufficient evidence to rebut this prima facie evidence. Further, on September 21, 1961, the Internal Revenue Service filed a notice of a federal tax lien upon all property and rights to property belonging *Page 1036 
to "Stephen Sanders, Transferee," due to the failure of Clayton Sanders to pay federal income taxes. The federal tax lien was filed and the property was sold by the United States before the State's purported sale of the property. This is sufficient evidence to support the trial court's conclusion that the United States lien was superior to the State's lien.
Based upon our review of the record, we hold that the trial court's judgment is adequately supported by the evidence and that it is not clearly erroneous. Consequently, the trial court's judgment is due to be affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.