947 So.2d 1031 (2006)
WOODLAND GROVE BAPTIST CHURCH
v.
WOODLAND GROVE COMMUNITY CEMETERY ASSOCIATION, INC.
1040679.
Supreme Court of Alabama.
April 28, 2006.
Rehearing Denied July 21, 2006.
*1034 Chriss H. Doss of Chriss H. Doss & Associates, P.C., Birmingham, for appellant.
Debbie Lindsey Jared and Charles Matthew Brunson of Jared & Brunson, Elba, for appellee.
SEE, Justice.
The Woodland Grove Baptist Church ("the Church") appeals from the trial court's judgment quieting title to the Woodland Grove Community Cemetery in the Woodland Grove Community Cemetery Association, Inc. We reverse the trial court's judgment and render a judgment for the Church.

Facts
The Woodland Grove Community Cemetery ("the cemetery") is located in Coffee County. The Woodland Grove Baptist Church was constituted on August 7, 1855, and was incorporated on August 13, 2002. For more than 150 years, the cemetery has been a community cemetery; both members of the Church and nonmembers are buried in the cemetery. The cemetery has been maintained by the Church since the Church was established in 1855, holding "work days" to clean both the Church grounds and the cemetery. Both members of the Church and nonmembers have participated in these "work days."
On March 9, 1947, Pearl B. Moseley was elected to be the Church clerk. While acting as the Church clerk, Moseley established the Woodland Grove Cemetery Fund ("the fund"). Donations for the purpose of maintaining the cemetery were deposited in the fund, and, among other things, the fund was used to pay Church members to maintain the cemetery. The fund was established using the Church's tax-identification number. In addition to managing the fund, Moseley managed the affairs of the cemetery and acted as the contact person for those who were arranging a burial there. When Moseley retired, Julia Brooks was elected to the position of Church clerk.[1] Brooks performed the *1035 same duties that Moseley had previously performed, including the management of the cemetery and the fund.
In 2000, the Church erected a new structure adjacent to the cemetery; the new structure interferes with access to the cemetery. Because access to the cemetery had become restricted, in the spring of 2001, a group of individuals whose relatives were buried in the cemetery became concerned about the security and continued existence of the cemetery. This group of individuals formed the Woodland Grove Community Cemetery Association, Inc. ("the Association"), which was incorporated on December 14, 2001. Some of the members of the Association belong to the Church, but others do not. Brooks, who had resigned from her position as Church clerk in April 2001, was one of the incorporators of the Association. Shortly after the Association was formed, Brooks went to the bank and changed the name on the account constituting the fund from the "Woodland Grove Cemetery Fund" to the "Woodland Grove Community Cemetery Association, Inc." She testified at trial that she had consulted members of the Association before making the change but that in changing the name on the account she had acted unilaterally; no one from the Church had authorized the name change.
In March 2002, the Association petitioned the Coffee County Probate Court for the appointment of a commission to locate and mark the boundaries of and plat and survey the cemetery pursuant to § 11-17-1, Ala.Code 1975.[2] In April 2002, the Church sued the Association in the Coffee Circuit Court seeking to quiet title to the property on which the cemetery is located ("the cemetery property") under § 6-6-540, Ala.Code 1975.[3]
In April 2003, the Association moved the probate court to remove to the circuit court its petition for a boundary commission. The probate court granted the Association's motion. However, in June 2003, the circuit court ordered that the petition be returned to the probate court because, it reasoned, the Alabama Code contains no provisions providing for the transfer of a petition filed pursuant to § 11-17-1, Ala. Code 1975.[4] The probate court stayed action *1036 on the Association's petition for a boundary commission pending the circuit court's adjudication of the Church's action to quiet-title.
In January 2005, the circuit court in the Church's quiet-title action found that the Association held superior title to the cemetery property. The Church appeals.

Standard of Review
In an action to quiet title, when the trial court hears evidence ore tenus, its judgment will be upheld unless it is palpably wrong or manifestly unjust. Mid-State Homes, Inc. v. King, 287 Ala. 180, 249 So.2d 836 (1971); and Webb v. Griffin, 243 Ala. 468, 10 So.2d 458 (1942). However, the presumption of correctness does not attach to a trial court's conclusions of law. Cullman Wholesale, Inc. v. Simmons, 592 So.2d 1031, 1034-35 (Ala.1992); Gaston v. Ames, 514 So.2d 877, 878 (Ala. 1987); Smith v. Style Adver., Inc., 470 So.2d 1194 (Ala.1985); and League v. McDonald, 355 So.2d 695 (Ala.1978).

Analysis
"The purpose of [an action to quiet title] is not to invest the court with jurisdiction to sell or dispose of the title to the land, but merely to determine and settle [title] as between the [plaintiff] and the defendants." Dake v. Inglis, 239 Ala. 241, 243, 194 So. 673, 674 (1940) (citing Grayson v. Muckleroy, 220 Ala. 182, 124 So. 217 (1929); and Venable v. Turner, 236 Ala. 483, 183 So. 644 (1938)). This Court has applied a burden-shifting analysis to actions to quiet title under § 6-6-540, Ala. Code 1975:
"Under a statutory bill to quiet title, where it is shown that [the plaintiff] is in peaceable possession of the land, either actual or constructive, at the time of the filing of the bill and that there was no suit pending to test the validity of the title, a prima facie case is made out, entitling the [plaintiff] to relief, and the burden is then upon [the defendant] to establish his claim to the land. When the [defendant] shows legal title to the land, the burden of avoiding it by showing superior title by adverse possession (or by a better paper title) shifts to the [plaintiff]."
Wiggins v. Stapleton Baptist Church, 282 Ala. 255, 257, 210 So.2d 814, 816-17 (1968) (citing Stewart v. Childress, 269 Ala. 87, 92, 111 So.2d 8 (1959); and Webb v. King, 268 Ala. 282, 105 So.2d 653 (1958)).[5]See *1037 also Machen v. Wilder, 283 Ala. 205, 208, 215 So.2d 282, 284 (1968) ("In a statutory suit to quiet title, a prima facie case is made where it is shown that the [plaintiff] is in the peaceful possession of the land, either actual or constructive at the time of the filing of the bill and that there was no suit pending to test the validity of title, and the burden is then upon the [defendant] to establish his claim to the land. . . . But when the [defendant] shows legal title to the land, the burden of avoiding it by showing superior title by adverse possession shifts to the [plaintiff].").
In order for the trial court to hear the Church's quiet-title action, (1) the Church must have alleged in its complaint that it was in peaceable possession of the cemetery property, and (2) the trial court must have found that the Church showed that it was in peaceable, rather than scrambling, possession of the cemetery property. For the trial court to then conclude, as it did, that the Association held superior title to the cemetery property, it must have found (3) that the Association established legal title to the cemetery property, and (4) that after the burden shifted the Church was not able to show that its title was superior to that of the Association. Wiggins, 282 Ala. at 257, 210 So.2d at 816-17.[6] The Church contends that the trial court improperly concluded that the Association's claim to the cemetery property was superior to its claim. We agree; the trial court did err.

I. The Church alleged that it was in actual peaceable possession of the cemetery property
The plaintiff in a quiet-title action must allege in its complaint that it is in actual or constructive peaceable possession of the property to which it is seeking to quiet title.[7]City of Montgomery v. *1038 Brown, 285 Ala. 64, 228 So.2d 820 (1969); and Donohoo v. Smith, 207 Ala. 296, 92 So. 455 (1922). In this case, the Church alleged in its complaint that
"Woodland Grove Baptist Church, either as a religious association and/or by and through its Trustees, . . . hold[s] title to and/or [has] been in actual peaceful possession of land on which a cemetery sits, in whole or in part, for more than thirty (30) continuous years prior to the filing of this lawsuit."
Thus, the Church satisfied the first requirement for going forward with a quiet-title action.

II. The Church showed it was in peaceable possession of the cemetery property
The trial court has jurisdiction over quiet-title actions in which the plaintiff shows that he or she is in peaceable, rather than scrambling, possession of the property. Orso v. Cater, 272 Ala. 657, 661, 133 So.2d 864, 868 (1961) ("It is true that the [plaintiff] cannot recover under the statute unless his proof shows his peaceable possession, as contradistinguished from a contested, disputed or scrambling possession."); Hinds v. Federal Land Bank, 237 Ala. 218, 219, 186 So. 153, 154 (1939) ("a scrambling, disputed, or contested possession will not support [a quiet-title] action"); and Buchmann Abstract & Inv. Co. v. Roberts, 213 Ala. 520, 521, 105 So. 675, 676 (1925) ("we are constrained to hold that the possessory acts herein indicated on the part of respondent were sufficient as a contest of complainant's possession so as to destroy the peaceable character thereof and constitute it a disputed, contested or scrambling one. . . . This conclusion destroys the jurisdiction of the court over the cause at its very threshold, and renders unnecessary a consideration of the questions which constitute any of the issues as to the contest of title."). The plaintiff in a quiet-title action must present evidence to support "a peaceable possession in the [plaintiff] as contradistinguished from a contested, disputed or scrambling possession." Price v. Robinson, 242 Ala. 626, 627, 7 So.2d 568, 569 (1942) (citing Randle v. Daughdrill, 142 Ala. 490, 39 So. 162 (1905), and George E. Wood Lumber Co. v. Williams, 157 Ala. 73, 47 So. 202 (1908)); see also Cobb v. MacMillan Bloedel, Inc., 604 So.2d 344, 345 (Ala.1992) ("In an action to quiet title to real property, the plaintiff must prove that he was in actual or constructive possession of the property and that his possession was peaceable, as distinguished from scrambling or disputed; furthermore, there must be no suit pending at the time the suit is commenced testing the defendants' claims." (citing Denson v. Gibson, 392 So.2d 523 (Ala.1980))).
Whether a plaintiff is in peaceable possession is a question of fact, Price v. Robinson, 242 Ala. at 627, 7 So.2d at 569, that is evaluated as of the date the action is commenced. Davidson v. Blackwood, *1039 250 Ala. 263, 34 So.2d 205 (1948). "[O]ne is in peaceable possession as opposed to scrambling possession when at the time of the suit no other party is denying the fact of complainant's possession. If both parties claim actual possession or are scrambling for it, then the possession is not peaceable." Denson, 392 So.2d at 524-25. "The distinction between peaceable possession and scrambling possession is that `in the former, an adverse party may be denying the [plaintiff's] right to possession, but in the latter there is a denial of the fact of his actual possession.'" Cullman Wholesale, 592 So.2d at 1034 (quoting Adams v. Bethany Church, 380 So.2d 788, 791 (Ala.1980)).[8]
The Church demonstrated that it was in peaceable, as opposed to scrambling, possession. Although the trial court did not make an express finding of fact regarding whether the Church was in peaceable possession of the cemetery property, "[w]here a trial court does not make specific findings of fact concerning an issue, we will assume that the trial court made those findings necessary to support its judgment, unless such findings are clearly erroneous." Sundance Marina, Inc. v. Reach, 567 So.2d 1322, 1324 (Ala. 1990) (citing Robinson v. Hamilton, 496 So.2d 8 (Ala.1986)). The trial court had to conclude that the Church's possession was peaceable and not scrambling; otherwise, it could not have proceeded with the Church's quiet-title action. The Association alleged that the Church was not in peaceable possession of the cemetery property, "and at best had only `scrambling possession' which is insufficient to maintain the [quiet-title] action." Association's brief, p. 14. However, the Association did not provide facts in support of that allegation.
This Court has held that "[m]erely going on the property which is at the time in the actual possession of someone else, and claiming title to it and warning others off it" does not constitute a challenge to the other's peaceable possession so as to render it scrambling and prohibit the other from bringing an action to quiet title. Adams, 380 So.2d at 791. In this case, the Association's actions did not go even that far. It did not claim title to the cemetery property, nor did it warn others off the property. Thus, the Association's only action going onto the cemetery property in *1040 the fall of 2001 to clean the groundswas insufficient to render the Church's possession of the cemetery property scrambling rather than peaceable.[9]
Nor does the Association's petition in the probate court for a boundary determination render the Church's possession scrambling rather than peaceable. When the Church filed its action to quiet title, the Association had petitioned the probate court to appoint a commission to locate and mark the boundary of the cemetery pursuant to § 11-17-1, Ala.Code 1975. However, the Association's petition in the probate court does not deny the Church's peaceable possession of the cemetery property. Cullman Wholesale, 592 So.2d at 1034. Section 11-17-1, Ala.Code 1975, provides that "[f]ive or more citizens may petition the judge of probate" for the appointment of such a commission. A petition brought under this statute is not a challenge to the fact of another party's peaceable possession of property; it is merely an action to establish the boundaries of a burial ground, and such an action can be brought by any five individuals, regardless of whether they have an ownership claim or interest in the property at issue. § 11-17-1, Ala.Code 1975.
The Association also requested that the probate court "designate the property on said map indicated as Cemetery . . . as belonging to Woodland Grove Community Cemetery Association." However, the Association's "challenge" at most denies the Church's right to possession, not the fact of the Church's peaceable possession, and is, therefore, not sufficient to defeat the Church's claim of peaceable possession. See Cullman Wholesale, 592 So.2d at 1034.
Moreover, even if we considered the Association's petition for a boundary commission as an action challenging the fact of the Church's peaceable possession, merely maintaining an action challenging title to the property, without more, is insufficient to defeat the Church's claim of peaceable possession. As this Court has explained:
"`But the statute requires that such possession shall be "peaceable." So the question arises, what is peaceable possession? It cannot mean that it is peaceable unless there be some legal proceeding in progress to test the title or right to the possession; for the object of the statute is to allow the party who is in possession, and who cannot force the adversary claimant to institute any proceeding, to bring said party into court in order to determine whether he has any just claim to the property. The word "peaceable," then, refers to the character of his possession. So long as his possession is so clear that no one is denying the fact of his actual or constructive possession, it is peaceable, although some other person may be denying his right to possession.'"
Chestang v. Tensaw Land & Timber Co., 273 Ala. 8, 11, 134 So.2d 159, 161 (1961) (quoting George E. Wood Lumber Co., 157 Ala. at 76-78, 47 So. at 203).
*1041 Thus, the Church was in peaceable possession of the cemetery property when it initiated the current action to quiet title. Because the Church was in peaceable possession of the cemetery property, the Church established a prima facie case that entitled it to relief. Wiggins, 282 Ala. at 257, 210 So.2d at 816-17.

III. The Association did not establish legal title to the cemetery property
In a statutory bill to quiet title, once the plaintiff establishes that it is in peaceable possession of the disputed property, the burden shifts to the defendant to show legal title to the property.
"Under a statutory bill to quiet title, where it is shown that [the plaintiff] is in peaceable possession of the land, either actual or constructive, at the time of the filing of the bill and that there was no suit pending to test the validity of the title, a prima facie case is made out entitling the [plaintiff] to relief, and the burden is then upon [the defendant] to establish his claim to the land."
Wiggins, 282 Ala. at 257, 210 So.2d at 816 (citing Stewart, 269 Ala. at 92, 111 So.2d at 12). A defendant can overcome the presumption that the plaintiff is entitled to relief only by showing legal title to the land. As this Court has explained, "[i]t is not necessary for the plaintiff, in a [quiet-title action], to prove his title, further than to prove his peaceable possession; but the bill is to test the validity of the [defendant's] title, and the burden is on the [defendant] to prove his title." Smith v. Irvington Land Co., 190 Ala. 455, 460, 67 So. 250, 251 (1914); see also Newell v. Manly, 173 Ala. 205, 205, 55 So. 495, 496 (1911) ("The [plaintiff] does not have to prove his title at all, and if he is in peaceable possession the sole inquiry is whether the [defendant] has proved any title in himself." (citing George E. Wood Lumber Co., 157 Ala. at 76-77, 47 So. at 203, Whittaker v. Van Hoose, 157 Ala. 286, 289, 47 So. 741, 741 (1908), and Dickinson v. Harris, 155 Ala. 613, 615, 47 So. 78, 78 (1908))). The Church was in peaceable possession of the cemetery property; therefore, the burden shifted to the Association to prove that it had legal title to the cemetery property.
This Court has said that legal title[10] can be shown by a valid deed. Palmer v. Resolution Trust Corp., 613 So.2d 373, 375 (Ala.1993) (legal title created by a foreclosure deed); Harris v. Vettenburg, 548 So.2d 1036 (Ala.1989) (warranty deed conveying property to "B.J. Vettenburg" vested legal title to property in Betty Jean Vettenburg even though she had never been known as "B.J."); and Mid-State Homes, Inc. v. Butler, 287 Ala. 584, 253 So.2d 511 (1971) (in an action for ejectment, the Court held that when a mortgagee foreclosed its duly recorded mortgage, purchased the property at the foreclosure sale, and received a foreclosure deed to the mortgaged property, legal title vested in it paramount to any junior mortgage).[11]
The Association's answer to the Church's complaint denies the allegations *1042 made by the Church but does not allege legal title or any other claim to the cemetery property, nor did the Association present evidence to the trial court indicating that it had legal title to the cemetery property. In addition, the Association does not argue in its brief to this Court that it has legal title to the cemetery property. Instead, the Association contends that "the Association did clearly show superior title to the property." Association's brief, p. 15. However, under the applicable burden-shifting analysis, whether the Church or the Association holds "superior title" to the cemetery property is not a question to be decided until it has been determined (1) that the Church is in peaceable possession of the cemetery property (which we have determined) and (2) that the Association holds legal title to the cemetery property (which has not been determined). Wiggins, 282 Ala. at 257, 210 So.2d at 816-17.
To the extent that the Association argues that it has legal title, its argument is not persuasive. The Association's purported title to the cemetery property is premised on its alleged ownership of the fund. However, it is unclear how any ownership in the fund shows ownership in the cemetery property. In addition, the Association does not show that the fund is independent of the Church. Furthermore, the Association's claim to ownership of the fund is questionable.
The Association's argument that ownership of the fund shows ownership of the cemetery property is as follows: When Moseley established the fund, she unwittingly set up an unincorporated association charged with the upkeep of the cemetery; Moseley served as the de facto trustee of that unincorporated association. The Association asserts that that unincorporated association was independent of any other entity, including the Church. The Association contends that when Brooks took over the fund, she succeeded Moseley as the de facto trustee of the unincorporated association. The Association argues that Moseley, and then Brooks, held the cemetery property as the de facto trustees of an unincorporated association, and, under Alabama law, "`a court of equity treats the active members of a voluntary nonbusiness association as the owners of its properties in trust for the community interest of the unincorporated society or association.'" Association's brief, pp. 16-17 (citing Johnson v. Sweeney's Lane Church of God, Inc., 270 Ala. 260, 264, 116 So.2d 899, 902 (1960)). Thus, the Association's argument goes, when the Association was incorporated, it succeeded to the cemetery property held in trust by Brooks because, the Association claims, "where individuals undertake to maintain a cemetery as de facto trustees, and later incorporate for that common purpose, then the corporation is due to be appointed successor trustee for the cemetery." Association's brief, p. 17 (citing Shepherd v. Hickory Grove Cemetery Mem'l Fund, Inc., 649 So.2d 1266 (Ala.1994)).[12] The problem with the Association's *1043 argument is that it never identifies the initial source of Moseley's alleged ownership of the cemetery property. Because there is no evidence indicating that Moseley ever acquired title to the cemetery property, there is no interest in the cemetery property that the Association, as successor in interest, could claim.
The Association argues that Moseley was the initial holder in trust of the cemetery on behalf of the Association because she was responsible for the fund, for arranging burials, and for the maintenance of the cemetery. This argument is unpersuasive because the Association does not show that the fund is distinct from the Church. While she was acting as the Church clerk, Moseley established the fund for the purpose of accepting donations to maintain the cemetery grounds. Moseley established the fund using the Church's tax-identification number; thus, the fund held itself out to donors as an adjunct of the Church. No evidence was presented at trial to suggest that Moseley intended to perpetrate a fraud on the Internal Revenue Service by using the Church's tax-identification number on a fund that she believed was an entirely separate entity from the Church. The Association also does not provide evidence that suggests that Brooks believed she was the de facto trustee of an unincorporated association. In fact, Brooks's testimony at trial establishes the opposite. When asked at trial whether she considered herself a trustee of the fund, she stated: "I didn't really classify myself as a trustee. I would think, just a caretaker of the account."
Contrary to the Association's argument that the fund is distinct from the Church, testimony at trial suggested that the fund was similar to other Church funds that had designated purposes, such as the Ball Fund, the Ladies' Fund, and the Men's Fund, and was not, as the Association claims, an unincorporated association distinct from the Church. Thus, the Association's ownership of the fund is at best doubtful; it is this ownership that is the basis of the Association's argument that it has superior title to the cemetery property.
The Association's contentions do not support its argument that it possesses legal title to the cemetery property, that is, in the form of a deed or other legal document otherwise enforceable against the claim of others. Because the Association failed to show that it has legal title to the cemetery property, the Association did not overcome the Church's prima facie case and the consequent presumption that the Church is entitled to relief. Wiggins, 282 Ala. at 257, 210 So.2d at 816; Smith, 190 Ala. at 460, 67 So. at 251; and Newell, 173 Ala. at 205, 55 So. at 496. Thus, the trial court's decision is due to be reversed. Cullman Wholesale, 592 So.2d at 1034-35.

Conclusion
The Church established proof of its peaceable possession of the cemetery property *1044 and thereby presented a prima facie case presumptively entitling it to relief. Because the Association did not then establish that it held legal title to the cemetery property, it failed to overcome the presumption in favor of the Church.[13] The judgment below was error as a matter of law; therefore, we reverse the judgment of the trial court and render a judgment for the Church.
REVERSED AND JUDGMENT RENDERED.
NABERS, C.J., and LYONS, WOODALL, SMITH, and PARKER, JJ., concur.
HARWOOD, STUART, and BOLIN, JJ., dissent.
STUART, Justice (dissenting).
I respectfully dissent. As the majority opinion recognizes, in order for Woodland Grove Baptist Church to recover in this quiet-title action, the Church had to establish that it was in peaceable possession of the cemetery property. Orso v. Cater, 272 Ala. 657, 661, 133 So.2d 864, 868 (1961). "[O]ne is in peaceable possession . . . when at the time of the suit no other party is denying the fact of the complainant's possession." Denson v. Gibson, 392 So.2d 523, 524-25 (Ala.1980). I disagree with the majority's conclusion that the Church established that it was in peaceable possession of the cemetery property.
A review of the evidence indicates that the Church did not establish that it was in peaceable possession of the cemetery property. The testimony of the former Church clerk, Julia Angela Brooks, shows that possession of the cemetery property was contested. The following exchange occurred during the direct examination of Brooks by the Church's counsel:
"[Counsel for the Church]: Is it your contention that the church does not own the cemetery?
"[Brooks]: I don't think anyone owns the cemetery.
"[Counsel for the Church]: Ma'am?
"[Brooks]: I don't think anyone owns the cemetery. Because the cemetery was there many years before the church."
This testimony alone established that the Church's possession of the cemetery property was not peaceable. Other testimony echoed Brooks's testimony by establishing that although the cemetery was located adjacent to the Church, the Church's possession of the cemetery property was disputed.[14] See Chestang v. Tensaw Land & *1045 Timber Co., 273 Ala. 8, 11, 134 So.2d 159, 161 (1961) ("`The word "peaceable," then, refers to the character of his possession. So long as his possession is so clear that no one is denying the fact of his actual or constructive possession, it is peaceable, although some other person may be denying his right to possession.'"). Because the Church did not establish peaceable possession of the property, the Church cannot recover in this quiet-title action.
If a trial court's ruling is correct for any reason, this Court will affirm that ruling. See Davison v. Lowery, 526 So.2d 2 (Ala. 1988); and City of Montgomery v. Couturier, 373 So.2d 625, 627 (Ala.1979)(holding that a judgment will be affirmed if it is proper on any legal basis, even if the reason given by the trial court for its judgment is a wrong reason). Here, the trial court held that the Church was not the owner of the cemeterythe correct result in light of the Church's failure to establish peaceable possession; therefore, I would affirm the trial court's judgment.
Moreover, even if I were to conclude that the Church was in peaceable possession of the cemetery property, my review of the evidence establishes that the Association did establish a claim to the cemetery property. The trial court heard ore tenus testimony from Brooks and other members of the community about the care and maintenance of the cemetery, the creation of the fund, the donations to the fund, the management of the fund, and the management of the cemetery. Ample evidence was presented to the trial court from which it could have concluded that the cemetery and the fund, established for its maintenance, were not part of the Church.[15] "[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence." Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977). Credible evidence supports the trial court's judgment; therefore, I would affirm that judgment.
HARWOOD and BOLIN, JJ., concur.
NOTES
[1] The exact date on which the transfer of office occurred is unclear. However, the parties indicate that Brooks served as the Church clerk for about 20 years until her resignation in April 2001.
[2] Section 11-17-1, Ala.Code 1975, provides:

"Five or more citizens may petition the judge of probate of any county in which any burial place, graveyard or cemetery is located, requesting him to appoint a commission to locate, mark the boundaries, plat and survey such burial place or to enlarge the area of any burial place, mark the boundaries thereof, plat and survey the part enlarged."
[3] Section 6-6-540, Ala.Code 1975, entitled "Right of action to settle title to lands by person in peaceable possession thereof," provides:

"When any person is in peaceable possession of lands, whether actual or constructive, claiming to own the same, in his own right or as personal representative or guardian, and his title thereto, or any part thereof, is denied or disputed or any other person claims or is reputed to own the same, any part thereof, or any interest therein or to hold any lien or encumbrance thereon and no action is pending to enforce or test the validity of such title, claim, or encumbrance, such person or his personal representative or guardian, so in possession, may commence an action to settle the title to such lands and to clear up all doubts or disputes concerning the same."
[4] The trial court's order states:

"Transferring cases from the Probate Court to Circuit Court are [§] 43-8-198 (Will Contest), [§] 12-11-41 (Removal of Administration of Estate by Circuit Court from Probate Court), [§] 12-11-10 (Involuntary Juvenile Commitment Proceedings), and [§] 12-22-20, et. seq. (Appeals from Probate Court to Circuit Court). There are no provisions for the transfer of a case filed pursuant to [§] 11-17-1, Code of Alabama 1975. There are no provisions giving the Circuit Court jurisdiction over such a case that is reserved to the Probate Court."
[5] In Watson v. Taylor, 293 Ala. 386, 391-92, 304 So.2d 181, 185 (1974), this Court articulated the burden-shifting analysis but distinguished between constructive and actual peaceable possession:

"The primary issue in a statutory action to quiet title in personam is the title or interest of the [defendant]. When it is shown that [the plaintiff] is in actual peaceable possession (as opposed to peaceable constructive possession) at the time of filing the complaint and that no other suit is pending, title and ownership in the [plaintiff] are presumed and the burden is on the [defendant] to establish a valid claim to the lands. Only if the [defendant] then establishes a valid claim does the [plaintiff] have the burden of proving what title he has and that it is superior."
Watson's distinction between actual and constructive possession appears to be a misstatement. Two of the cases it cites in support of that distinction, Kendrick v. Colyar, 143 Ala. 597, 42 So. 110 (1904), and City Loan & Banking Co. v. Poole, 149 Ala. 164, 43 So. 13 (1907), do not mention either actual or constructive peaceable possession. The third case it cites, Wiggins v. Stapleton Baptist Church, supra, states that it is sufficient for the plaintiff to show "peaceable possession of the land, either actual or constructive." 282 Ala. at 257, 210 So.2d at 816. Therefore, neither Kendrick, City Loan, nor Wiggins provides authority for the Watson Court's articulation of a distinction between actual and constructive peaceable possession. Moreover, § 6-6-540, Ala.Code 1975, provides that "any person . . . in peaceable possession of lands, whether actual or constructive," can bring an action to quiet title.
[6] In its order, the trial court stated the following with regard to the applicable law:

"In a quiet title action the appropriate test is to determine which among the parties claiming right of title and possession hold superior title. Gardner v. Key, 594 So.2d 43 (Ala.1992). A quiet title action determines rights and interests in land as between Plaintiff and Defendant. Holcomb v. Morris, 457 So.2d 973 (Ala.[Civ.App.]1984). Complainants seeking to quiet title must have the quiet and peaceful possession, actual or constructive, of the land claimed as distinguished from a scrambling or disputed possession. Ford v. Washington, 259 So.2d 226 (Ala.1972)."
The trial court's recitation of the applicable caselaw, however, is incomplete; it does not articulate the complete burden-shifting analysis. The holding in Gardner v. Key, 594 So.2d 43 (Ala.1992), does not apply to this case for two reasons. First, Gardner involves a summary judgment in a quiet-title action. Second, the plaintiff in Gardner held a valid deed to the disputed property. The trial court in Gardner entered a summary judgment for the plaintiff after he presented, in support of his summary-judgment motion, certified copies of deeds to the disputed property showing that he and his predecessors in interest had held legal title to the property for over 65 years. 594 So.2d at 44. The trial court's review of the chain of title in Gardner also showed that the party who allegedly conveyed the disputed property to the defendant had lost all of his legal interest in the property 30 years before the conveyance and, thus, the defendant's deed was invalid and the defendant had no legal claim to the property. The defendant in Gardner lost because the defendant did not produce substantial evidence creating a genuine issue of material fact.
[7] One has constructive possession of property when one has a legal estate in fee. Denson v. Gibson, 392 So.2d 523, 524-25 (Ala.1980); Hinds v. Slack, 293 Ala. 25, 299 So.2d 717 (1974); and George E. Wood Lumber Co. v. Williams, 157 Ala. 73, 47 So. 202 (1908). Actual possession generally refers to the physical occupation of the land. Hinds v. Slack, 293 Ala. at 28, 299 So.2d at 719. The Church alleged in its complaint that it was in actual peaceable possession of the cemetery property. The Church argues in its brief to this Court that it should be found to be in constructive peaceable possession of the cemetery property by virtue of an 1859 deed conveying the property to the Church. The trial court found that none of the deeds relevant to the instant controversy, that is, those conveying property to the Church in 1859, 1975, 1978, 1996, and 2000, describe the tract of land encompassing the cemetery property; however, we pretermit discussion of whether the Church had constructive possession of the property.

Moreover, whether the Church was in actual or constructive peaceable possession does not impact our analysis; under Wiggins, 282 Ala. at 257, 210 So.2d at 816-17, a showing of peaceable possession, either actual or constructive, entitles the plaintiff to the presumption of relief and shifts the burden to the defendant to show legal title.
[8] For example, this Court has held that the "drilling of core holes, marking the boundary with paint, the building and traversing of roads, checking for forest infestation, posting of mining permit signs, and monthly inspections to prevent trespassing" was conduct sufficient to support peaceable possession. Cullman Wholesale, 592 So.2d at 1034. This Court has also held that the assessment of the property to the plaintiff and the plaintiff's use of lumber from an abandoned, storm-damaged church building coupled with cutting timber from the land, including large-scale operations and plantings, were factors demonstrating that the plaintiff was in peaceable possession of the land at issue. Mt. Gilead Church Cemetery v. Woodham, 453 So.2d 362 (Ala.1984).

In contrast, this Court has held that a plaintiff's possession was scrambling where a defendant claimed a right to possession of a 2-acre tract of land, brought such a claim to the knowledge of the plaintiffs before the plaintiffs pursued the quiet-title action, used a church building on the 2-acre lot for many years as a place of worship, and used a cemetery on the lot for burials for at least 70 years. Price v. Robinson, 242 Ala. 626, 7 So.2d 568 (1942). The facts in Price are distinguishable from the facts in this case because the defendants in Price occupied the disputed property for at least 70 years before the action to quiet title. In contrast, the Association had been in existence for only one year when the Church brought this action to quiet title in April 2002, and the only action the Association took with respect to establishing possession was cleaning the cemetery grounds in the fall of 2001.
[9] The dissent quotes Brooks's testimony during direct examination by the Church's counsel in which she states: "I don't think anyone owns the cemetery." This statement alone does not establish that the Church's possession of the cemetery was not peaceable. Brooks's statement is that neither the Church nor the Association owns the cemetery property. She does not claim actual possession of the cemetery property on behalf of the Association and does not render the Church's possession scrambling. See Cullman Wholesale, 592 So.2d at 1034. Moreover, to the extent her statement is a denial of anything, it is a denial of the Church's right to possession, not a denial of the Church's possession so as to render its possession scrambling. See Denson, 392 So.2d at 524-25.
[10] "Legal title" is defined as "[a] title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest." Black's Law Dictionary 1523 (8th ed.2004).
[11] Legal title can also be shown through a mortgage. Baxter v. SouthTrust Bank of Dothan, 584 So.2d 801, 804 (Ala.1991) ("A mortgage will pass legal title to the mortgagee, leaving the mortgagor with an equity of redemption, and the priority of persons claiming an interest in the same property will be determined by the order in which they filed for record."). However, in the context of this case, a deed is the more pertinent method of establishing legal title.
[12] The Association's reliance on Johnson and Shepherd as support for its argument that its claim to ownership of the cemetery property is superior is misplaced. Both cases involved a conveyance of property by deed to an unincorporated association. The issue in Johnson was whether a church that was an unincorporated association when it received a warranty deed purporting to convey title to a certain parcel of land acquired legal title to the parcel of land upon its incorporation. 270 Ala. at 265, 116 So.2d at 903. In Shepherd, the owner of the real estate on which a cemetery was to be built conveyed the land to three individuals specifically "as trustees for use as a public burial ground." 649 So.2d at 1266. After the death of the original trustees, three individuals undertook to maintain the cemetery, serving as its de facto trustees until a corporation was formed that succeeded to the interest in the cemetery. 649 So.2d at 1267-68. In both Johnson and Shepherd, the unincorporated association that preceded the incorporated association received a conveyance of the contested real property in the form of a deed. In contrast, in this case, even if we were to assume that Moseley did form an unincorporated association, no person or entity ever conveyed the cemetery property to that unincorporated association. Therefore, Johnson and Shepherd do not apply. The Association's argument that it is the successor in interest to the unincorporated association established by Moseley, which allegedly owned the cemetery property, is not supported by the facts or the cited authority. The Association did not establish a valid claim to the cemetery property and definitely did not produce legal title sufficient to defeat the presumption of the Church's peaceable possession.
[13] It may be that the Association is better able and more highly motivated than is the Church to care for the cemetery; however, we cannot base our decision on that ground. To do so would be effectively to annul our fundamental right of property, declaring property to belong to him who can convince a court that his use and care are preferable to those of the present owner. The absolute right to property "consists in the free use, enjoyment, and disposal of all his acquisitions, without any control or diminution, save only by the laws of the land." 2 William Blackstone, Commentaries, 138. The right to property is a fundamental right on which our other rights are based, for, as Blackstone explained, "in vain would [our absolute rights] be declared, ascertained, and protected by the dead letter of the laws, if the constitution had provided no other method to secure their actual enjoyment. It has, therefore, established certain other auxiliary subordinate rights of the subject, which serve primarily as outworks or barriers, to protect and maintain inviolate the three great and primary rights of personal security, personal liberty, and private property." 2 William Blackstone, Commentaries, 140-41.
[14] Additional evidence included evidence that members of the community who were not members of the Church were buried in the cemetery, that members of the community with no affiliation to the Church participated in the cleanup days to maintain the cemetery, and that the Church did not participate in decisions concerning the cemetery.
[15] Evidence supporting the trial court's conclusion include the fact that for over 30 years the administrator of the fund did not have authority to and never executed checks on behalf of the Church, that all decisions made regarding the cemetery were made without the Church's approval, and that the Church minutes never reflected a discussion of the cemetery or the fund.